302 So.2d 571

**James G. DAVIS**

v.

**STATE.**

**6 Div. 756.**

Court of Criminal Appeals of Alabama.
Oct. 1, 1974.

Rehearing Denied Oct. 29, 1974.

Tom Drake and John H. Chapman, Cullman, for appellant.

William J. Baxley, Atty. Gen., and Johnny Richard Piel, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant stands convicted of murder in the first degree for the shotgun slaying of his wife on the night of September 21, 1973. In accordance with the verdict of the jury, the court sentenced him to life imprisonment.

Counsel was appointed to represent him on September 25, 1973. He was given a preliminary hearing on October 25, 1973, and was indicted on November 2, 1973. He was arraigned on November 12, 1973, and pleaded not guilty and not guilty by reason of insanity and the case went to trial on November 26.

On the morning of the trial date, counsel for appellant filed a written motion for a mental examination under the provisions of Title 15, Section 425, Code of Alabama 1940.

The trial court heard this motion out of the presence of the jury. Appellant was sworn and testified at this hearing, but he did not take the stand during the trial in chief. During a colloquy between the court and defense attorneys, it was developed that counsel was told by appellant that he had been treated by a psychiatrist in Los Angeles, California, during 1972 and until February, 1973, and counsel moved for a continuance until they could get the medical records from California. The court asked counsel when they first came into possession of this information and they replied that they were informed of this matter four or five weeks prior to trial date.

It was further developed at this hearing that actually appellant had been seen by a psychologist and not a psychiatrist in Los Angeles and this was in connection with a drinking problem. Appellant was serving a three-year probation term for assault and battery committed on his wife—the deceased—in California.

At the conclusion of the hearing, the trial court denied the motion for a mental examination and overruled the motion for a continuance.

Appellant and the deceased lived together as husband and wife for about a year prior to their marriage in California in 1972. It was the third marriage for each of them. Appellant had a four-year-old son by one of his previous marriages and this child was in custody of his mother. The deceased had a child by one of her previous marriages. Two children were born as the result of the marriage of appellant and the deceased. The oldest child was placed in a foster home in California. The youngest child was three weeks old at the time appellant shot and killed his wife. Prior to the homicide, this child had been placed in the temporary custody of an uncle and aunt of appellant in Cullman, Alabama.

Appellant got permission of his probation officer in June, 1973, to leave California and come to Alabama. An *unsigned* probation report was sent from Los Angeles to the Sheriff's Department in Cullman and was submitted to the District Attorney

for the first time during the trial. There was no attempt to introduce this report in evidence by either side, but it was referred to quite extensively on both direct and cross-examination of a deputy sheriff called as a witness for the state.

The probation report covered appellant's life from age ten until February, 1973, a period of twenty-two years. It is replete with reference to appellant being an alcoholic or habitual drunkard and his assault and battery conviction was suspended on condition that he refrain from the use of all alcoholic beverages, including beer and wine, and to stay out of places where such beverages were sold and dispensed, continue to seek medical help and maintain employment. The report notes that on February 27, 1973, the probation officer had a recent conversation with a Dr. Dean in which the officer was advised that appellant was not considered to be in need of psychotherapy at that time.

On the afternoon of September 21, 1973, preceding the homicide that night at 9:40 P.M., appellant and his wife were in the home of his grandmother located about five miles east of Cullman. They got into an argument about the children in California and the three-week-old baby in Cullman. The deceased begged appellant to take her to see the baby and he refused, saying she did not deserve to see the child. She kept importuning him to carry her to see her baby and he would not accede to her request. She held out her arms and told him she just wanted to hold her baby one more time. Finally appellant's grandmother asked him to take her to visit the baby for a little while and he agreed. While visiting the baby, appellant started drinking beer. He got some beer to carry to his grandmother's house and drank one beer in his grandmother's presence. He bought a pint of whisky, and it was practically consumed when the officers found the bottle. It is not clear from the record how much beer he drank.

After dinner the three were sitting at the kitchen table and the deceased brought up the children again. Without saying a word, appellant got up from the table and went in another room. He returned in a few seconds with a double-barreled shotgun and said, "I am going to kill her." His grandmother protested saying, "No, Jim. No, Jim." He pointed the gun towards his wife's head. She folded her hands in her lap, looked up into his face, and she smiled at him. He pulled the trigger at close range and blew half of her head away. She fell to the floor and appellant placed the gun on the floor next to her dead body. The grandmother walked into the livingroom to use the telephone and appellant followed her and told her not to call anyone. In a few minutes appellant called his mother in California and told her he had just killed his wife. Appellant handed the receiver to his grandmother and told her his mother did not believe him. The grandmother told her daughter-in-law that appellant shot and killed his wife.

Twenty-five minutes later appellant told his grandmother she could call a nephew. While she was calling, she heard appellant drive off in his automobile. He was intercepted by his uncle and returned to the home of the grandmother to await the arrival of the sheriff. He told his uncle, "I want to talk to you, I shot and killed Marsha." When the sheriff arrived, he gave appellant the *Miranda* warnings, placed him under arrest and put him in the sheriff's car. En route to jail, the sheriff smelled the odor of alcohol and it was very strong. When they got to the jail, appellant got out of the car and was staggering as he walked into the jail house.

Sometime the next day, a deputy sheriff interviewed appellant about the shooting of his wife after first giving him the *Miranda* warnings. The only statement appellant made was, "I thought it was only a dream that I killed Marsha."

The only real insistence of error on this appeal is the action of the trial court in denying appellant's motion for a mental examination under the provisions of Title 15, Section 425, supra. Counsel for appellant asserts that the judges on the appellate courts of Alabama have never properly construed this section of the code, particularly the words, "there is reasonable ground to believe that such defendant was insane" in the context in which the same appear in the statute. With all due deference to astute counsel, we simply do not agree with this assertion.

The appellate courts of this state have on numerous occasions held the statutory provisions for investigation into a defendant's sanity are not mandatory, but such proceedings are addressed to the sound discretion of the trial judge. Krappatsch v. State, 44 Ala.App. 549, 216 So.2d 188; Reedy v. State, 246 Ala. 363, 20 So.2d 528; Aaron v. State, 271 Ala. 70, 122 So.2d 360; Seibold v. State, 287 Ala. 549, 253 So.2d 302; Pace v. State, 284 Ala. 585, 226 So.2d 645; Barnett v. State, 51 Ala.App. 470, 286 So.2d 876, certiorari denied, 291 Ala. 773, 286 So.2d 890.

In Pace v. State, supra, the rule is best stated as follows:

"It is urged by the appellant that he presented enough evidence to raise a clear reasonable doubt of his sanity or competency and that the trial court abused its discretion in denying his petition for an examination. In Lokos v. State, 278 Ala. 586, 179 So.2d 714, this court held that a showing by defendant, on a petition for a mental examination, that he had been confined in a mental institution on several occasions and that he had received shock and insulin treatments was not a sufficient showing to warrant reversal of the trial court's decision to deny the petition. In that case, we said:

'However we may have individually acted at nisi prius in view of the fact that the appellant had previously been confined in a mental institution and is a nonresident, who was not only without funds but without family or friends in this state to assist him in securing witnesses in support of his plea of insanity, we cannot under our previous decisions hold that the trial court's action in overruling the motion for the appointment of three experts in the field of mental disorders works a reversal of the judgment below. * * *'

"Here, the appellant's showing was not more compelling than the evidence presented in Lokos. The legislature has not given a right to a defendant to receive a mental examination whenever he requests one. Absent such a right, machinery for screening requests must exist. The legislature has made the trial court this screening agent. We cannot say under our past cases that the appellant's showing was so compelling that the trial court abused its discretion in denying this petition. The trial court held a hearing, listened to the witnesses and made a decision. It might have decided either way on the question of whether the hearing produced any real evidence of legal insanity or legal incompetence. Its decision was not arbitrary or unsupported by reason or fact. We conclude that the trial court did not abuse its discretion."

In Reedy, Seibold, Pace and Barnett, supra, there were substantial showings of past mental disorders, hospitalizations, consultations with specialists, practitioners in mental and nervous diseases on which the court could have exercised its discretion under our statutory scheme and ordered mental examinations. There is no like showing in this case. All the trial court had here was the self-serving testimony of appellant that he was seen in consultation with a psychologist or a psychiatrist in Los Angeles, California, and this was in connection with his drinking problem. Additionally, there was an unsigned probation

report that these consultations were one of the conditions of probation. We are constrained to hold there was no abuse of discretion in this case.

This was a stormy and tragic marriage beset with mental and emotional problems that are always associated with alcoholic addiction. It was doomed to failure from the very beginning. On the record before us, we entertain little doubt that the deceased had grown weary of life at the age of twenty-eight. Her three children had been taken from her and placed in foster homes. Her husband was hopelessly lost to the bottle. The approaching end must have been a welcomed relief for when appellant pointed the shotgun at her head and said, "I am going to kill her", she looked him in the face and smiled as if to say, "Please pull the trigger and speed me on my journey."

Appellant was accorded a fair and impartial trial and counsel, in brief, states that the trial court made no error in the trial of the case except the adverse ruling in denying the motion for a sanity investigation.

Counsel further said:

"This is the first case tried by Honorable Fred C. Folsom after taking over the duties of Judge of the Circuit Court of Cullman County, Alabama. We commend him in the manner in which he presided in the presence of the jury and his conduct of the proceedings in their presence, particularly for his able charge to the jury. Very few lawyers without the former experience of a trial judge would have done as well."

We agree with these sentiments expressed by counsel and, accordingly, affirm the case.

Affirmed.

ALMON, TYSON and DeCARLO, JJ., concur.

CATES, P. J., not sitting.