UNITED STATES of America,
Plaintiff-Appellee,

v.

Pete HERNANDEZ,
Defendant-Appellant.

No. 77–5536.

United States Court of Appeals,
Fifth Circuit.

Sept. 18, 1978.

Rehearing En Banc Granted
Nov. 7, 1978.

Joseph G. Garza, Corpus Christi, Tex., for defendant-appellant.

J. A. Canales, U.S. Atty., Anna E. Stool, George A. Kelt, Jr., Asst. U.S. Attys., Houston, Tex., Robert A. Berg, Asst. U.S. Atty., Corpus Christi, Tex., James R. Gough, Asst. U.S. Atty., Houston, Tex., for plaintiff-appellee.

Before HILL and RUBIN, Circuit Judges, and HIGGINBOTHAM,* District Judge.

ALVIN B. RUBIN, Circuit Judge:

Pete Hernandez was convicted of possession of heroin with intent to distribute it and of its distribution, both in a single transaction and in violation of a single statute, 21 U.S.C. § 841(a)(1). He was sentenced to separate consecutive sentences of incarceration for ten years and special parole for two years on each count. He appeals on several grounds, principally asserting that he committed but one wrong and that he should, therefore, be sentenced only once. Bound by prior decisions of this court, we affirm his conviction and sentences.

I.

Two undercover agents, Maas and Pitts, working for the Drug Enforcement Administration, met with the defendant and his confederate, Pepe Acosta Hernandez, in an effort to buy heroin. The meeting occurred late one night in Corpus Christi, Texas, in a place called the New Orleans Room Lounge. The Hernandezes discussed the possible sale of a kilo of heroin to Maas, and agreed to provide a sample, one ounce for $1000. The two went away together in a black Cadillac, while the agents waited in the lounge.

* United States District Judge for the Northern District of Texas, sitting by designation.

When the two prospective sellers returned, Pepe Hernandez handed Maas a small tinfoil parcel containing a brown powder that appeared to the agent to be heroin as a sample of the product. Maas complained that the price was too high. Pepe said, "Well, let me see if I can do something." He asked the appellant, Pete, to step away from the table. The two moved away, spoke together, then returned to the table where the agents were seated. Pepe said, "It's going to have to be $1000 this time." Maas agreed to the price. About 11:30 p. m., Pepe left again, but Pete remained with the agents. The defendant said he had sold a pound of heroin that day, then engaged in shop talk about the varying prices of heroin, about the market in Chicago (whence Maas pretended to have come) and other matters.

Some time after midnight, Pepe returned, bent over the table, talked to Pete a moment, and then said to the agent, "I've got your ounce package. Do you want it here?" Maas and Pepe agreed to delivery in the men's room. Pepe and the agent went to the men's room; Pepe took a package out of his sock; the agent inspected it, and paid the $1000. Thereafter, they returned to the table and discussed future transactions. Pete said he could supply what the agents needed, gave them a phone number, and wrote his name and phone number on a bar napkin. Thereafter, the two pairs parted.

## II.

■ Recital of the evidence in detail, if viewed in the light most favorable to the prosecution, *Glasser v. United States*, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, disposes of the argument that the evidence was insufficient to convict Pete of possession.

. . . [P]roof of actual possession is not necessary to sustain a conviction for violation of the statutes involved; constructive possession is sufficient. Such

possession need not be exclusive, but may be shared with others. Moreover, it may be proven by circumstantial as well as by direct evidence . . . By the same token, mere presence in the area where the narcotic is discovered or mere association with the person who does control the drug or the property where it is located, is insufficient to support a finding of possession.

(Citations omitted.) *United States v. Stephenson*, 5 Cir. 1973, 474 F.2d 1353, 1355.

## III.

■ There is more substance to the argument that consecutive sentences were improper because the possession and distribution of heroin were both shown by the same acts. As discussed below, three circuits have proscribed separate sentences under these circumstances;[1] we are bound, however, by the law of this circuit to a contrary result.

Decisions of this circuit have permitted consecutive sentences to stand under circumstances legally indistinguishable from those presented in this case. In *United States v. Costello*, 5 Cir. 1973, 483 F.2d 1366, Costello received LSD from a third party for delivery to undercover agents and, five minutes later, completed the sale of LSD to the agents. We there said:

This circuit has long adhered to the so-called "different evidence" test. *United States v. Young*, 482 F.2d 993 (5th Cir. 1973). Possession proscribed by § 844(a), which was complete when Costello received the drugs from the third party, and distribution in violation of § 841(a)(1), which occurred with transfer to the agents, are separate offenses under this standard, and conviction of both offenses in the instant case was proper.

483 F.2d at 1368. In *United States v. Horsley*, 5 Cir. 1975, 519 F.2d 1264, *cert. denied*, 1976, 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d

1. The Sixth and Tenth Circuits have proscribed separate sentences, even if concurrent. *United States v. Stevens*, 6 Cir. 1975, 521 F.2d 334; *United States v. Olivas*, 10 Cir. 1977, 558 F.2d 1366, *cert. denied*, 1977, 434 U.S. 866, 98 S.Ct.

203, 54 L.Ed.2d 142. The Fourth Circuit has reached only the consecutive sentences problem. *United States v. Curry*, 4 Cir. 1975, 512 F.2d 1299; *United States v. Atkinson*, 4 Cir. 1974, 512 F.2d 1235.

350, we cited *Costello* with approval in holding there was no merger of the possession and distribution counts in a narcotics prosecution under 21 U.S.C. § 841(a)(1).

Other circuits have accepted the argument that the "different evidence" test, referred to in *Costello* determines the propriety only of separate convictions, and not of separate sentences.[2] Such a result, though superficially anomalous, might properly give effect to Congress's intentions in designing a particular statutory scheme. *See Prince v. United States*, 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370. It would be sophistic, however, to attempt thus to limit *Costello* and *Horsley*. In *Costello*, the consecutive sentences problem was directly raised, 483 F.2d at 1367, though not expressly discussed. Although *Horsley* also does not mention the sentencing issue expressly, we must bear in mind that panels of this circuit would ordinarily not discuss the separate convictions problem at all absent an enhancement of the penalty for one conviction, because of the operation of the concurrent sentences doctrine. *United States v. Ashley*, 5 Cir. 1978, 569 F.2d 975, 984; *Mishan v. United States*, 5 Cir. 1965, 345 F.2d 790, 791.

Were this panel to consider the consecutive sentences problem afresh, we would incline toward the views of the Fourth, Sixth, and Tenth Circuits, all of which would proscribe consecutive sentences in a case such as this. *United States v. Curry*, 4 Cir. 1975, 512 F.2d 1299, 1306, *cert. denied*, 1975, 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50; *United States v. Atkinson*, 4 Cir. 1975, 512 F.2d 1235; *United States v. Stevens*, 6 Cir. 1975, 521 F.2d 334; *United States v. Olivas*, 10 Cir. 1977, 558 F.2d 1366, *cert. denied*, 1977, 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142. In reaching their common conclusion, these circuits all relied on the Supreme Court's decision in *Prince v. United States, supra*. The Supreme Court there held that the crime of entering a bank with intent to commit a felony does not merge with the crime of subsequently consummated robbery; however, based on the legislative history of the governing statute, 18

U.S.C. § 2113, the Court found that, "when Congress made either robbery or an entry for that purpose a crime it intended that the maximum punishment for robbery should remain at 20 years." 352 U.S. at 329, 77 S.Ct. at 407, 1 L.Ed.2d at 374. Consecutive sentences of 20 years for robbery and 15 years for entering the bank with the intent to commit a felony were thus held improper.

In interpreting Congress's intention, *Prince* relied almost entirely on legislative history: the statute originally punished only robbery, and the Attorney General requested its amendment to extend the reach of federal law to less serious crimes effected with the same intent to steal. Although the Court expressly confined its opinion to "a unique statute of limited purpose," 352 U.S. at 325, 77 S.Ct. at 405, 1 L.Ed.2d at 372, the Fourth, Sixth, and Tenth Circuits have followed *Prince's* rationale in divining the Congressional intention underlying 21 U.S.C. § 841(a)(1), the legislative history of which is inconclusive on the sentencing problem. *See* H.Rep.No.91–1444, 91st Cong., 2d Sess. *in* 1970 U.S.Code Cong. and Admin.News, p. 4566; *cf., United States v. Valot*, 2 Cir. 1973, 481 F.2d 22. Analyzing *Prince*, the Fourth Circuit said persuasively in *United States v. Curry, supra* :

> In the instant case the evidence of the sale was relied upon to prove Curry's "intent to distribute" at the time of his possession. The gravamen of each offense is the distribution of a controlled substance: when the intent is carried out by a successful sale the offenses merge. To paraphrase the language of the Supreme Court on a similar point, we hold, therefore, that when Congress made either distribution or possession with intent to distribute a crime it intended that the maximum punishment for distribution should remain at fifteen years but, even if the culprit should fall short of accomplishing his purpose, he could be imprisoned for fifteen years for possessing with the felonious intent . . . In light of our conclusion concerning the consecutive sentences imposed on Curry this case will

2.  *See* cases cited in note 1 *supra*.

be remanded to the district court for the purpose of resentencing.

512 F.2d at 1306.

That there was here, in effect, but one transaction, none may dispute. It appears to us to impute an unduly harsh intention to Congress to divine a purpose on its part to permit two sentences totalling 20 years in a case such as this, when the governing statute fixes a maximum period of confinement of 15 years. However, in a circuit having 15 judges who sit in panels of three, 455 combinations are possible; we are duty-bound to adhere to normal judicial process, lest district judges, litigants, and members of the public be condemned to the vast wheel of chance of a wholly unpredictable appellate court in which each panel is free to reconsider the legal rules in a particular situation every time that problem recurs.[3] Although our own analysis pulls us elsewhere, in this situation consistency is duty and an essential part of the juridical process, not a hobgoblin of little minds[4]; therefore, the convictions and the sentences imposed in this case are AFFIRMED.

### On Rehearing

Before BROWN, Chief Judge, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judge.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case, 580 F.2d 188, reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc on briefs without oral argument. The Clerk will specify a briefing schedule for the filing of supplemental briefs.

---

3. Rubin, Views from the Lower Court, 1976, 23 U.C.L.A.L.Rev. 448, 455.

4. Emerson condemned only foolish consistency, although he added: "With consistency a great soul has simply nothing to do." R.W. Emerson, *Self-Reliance*, (1841).