**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Pete HERNANDEZ,
Defendant-Appellant.**

No. 77–5536.

United States Court of Appeals,
Fifth Circuit.

March 20, 1979.

Joseph G. Garza, San Antonio, Tex., (Court-appointed for Rehearing), for defendant-appellant.

J. A. Canales, U. S. Atty., Anna E. Stool, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., Robert A. Berg, Asst. U. S. Atty., Corpus Christi, Tex., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN and VANCE, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Acting jointly with a confederate, the defendant Pete Hernandez, sold heroin on a single occasion to two undercover agents. The defendant was never shown to have had actual possession of the controlled substance but constructive control during the course of the transaction was proved by the acts of his co-defendant. He was convicted both of possession with intent to distribute and distribution of heroin in violation of the same statute, 21 U.S.C. § 841(a)(1). We here review the validity of the imposition on him of consecutive sentences of imprisonment for ten years and special parole terms for twenty years [1] on each count.

Hernandez appealed his conviction, asserting that the evidence was insufficient to sustain a conviction for possession, and that he should not receive two sentences for committing only one offense. A panel of this court affirmed the conviction and sentences. *United States v. Hernandez,* 5 Cir.

1978, 580 F.2d 188. Having voted to review the case en banc, we now affirm the conviction, but vacate one of the sentences.

The panel opinion fully reviews the evidence presented at the trial. For present purposes, we merely note that all of the evidence related to a single transaction during which Hernandez and his co-defendant sold heroin to two undercover agents. The panel concluded that there was sufficient evidence to convict Pete Hernandez of possession of heroin, because the actual possession by his co-defendant, Pepe Acosta Hernandez,[2] was constructively his. 580 F.2d at 189. *See also United States v. Stephenson,* 5 Cir. 1973, 474 F.2d 1353, 1355. The panel affirmed the two sentences on the basis of precedents set by other panels of the court; however, reviewing both what it believed to be the incorrect results reached in our own decisions and the contrary conclusions of every other circuit that had considered the problem, it noted that, were it considering the issue *ab initio,* it would have decided the question differently. 580 F.2d at 190.

The panel followed *United States v. Costello,* 5 Cir. 1973, 483 F.2d 1366, as applied in *United States v. Horsley,* 5 Cir. 1975, 519 F.2d 1264, *cert. denied,* 1976, 424 U.S. 944, 96 S.Ct. 1413, 47 L.Ed.2d 350. In *Costello,* separate convictions for possession of LSD under 21 U.S.C. § 844(a) and distribution under 21 U.S.C. § 841(a)(1) were affirmed. The *Costello* court found that, under the "different evidence" test,[3] the facts showed that the possession and distribution of LSD were separate offenses. In *Horsley,* the court cited *Costello* to support its holding that the offenses of possession with intent

---

1. The panel opinion incorrectly stated that special parole terms of two years were imposed on each count.

2. The panel opinion mistakenly identified Pepe Acosta Hernandez as the brother of Pete Hernandez.

3. The different evidence test was defined by the Supreme Court in *Blockburger v. United States,* 1932, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309:

The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Accord, Gore v. United States,* 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405; *Hattaway v. United States,* 5 Cir. 1968, 399 F.2d 431.

to distribute and distribution of hashish oil did not merge under 21 U.S.C. § 841(a)(1). The panel declined to limit *Costello* and *Horsley* to the propriety of separate convictions rather than separate sentences because the issue was not raised in those cases.

The statute involved is succinct:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

21 U.S.C. § 841(a)(1).

The present case requires us solely to consider the intent of Congress in enacting this provision: did it intend to make a single delivery of narcotics punishable as two separate offenses—one, possession with intent to distribute and the other, the actual distribution—or did it define alternative offenses, one requiring proof of fewer facts than the other? The legislative history is silent on this point. The other circuits that have considered this problem have uniformly refused to permit double punishment for violation of these two phrases of Section 841(a)(1) in a single transaction. The Fourth[4] and Ninth[5] Circuits have proscribed consecutive sentences in cases where the possession with intent to distribute and distribution of the controlled substance were both proved by evidence of a single transaction. The Sixth[6] and Tenth[7] Circuits have even proscribed separate concurrent sentences. The Eighth Circuit, while not faced with exactly the same issue as the other courts, has held that simple possession under 21 U.S.C. § 844(a) is a lesser included offense of distribution under § 841(a)(1).[8]

No case has been cited to indicate that any court has taken the same approach as this circuit.

The divination of congressional intent begins with cases involving other offenses. In *Bell v. United States,* 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, the Court reversed the defendant's consecutive sentences on two counts of violating the Mann Act, 18 U.S.C. § 2421, where two women had been transported at one time. The Court recognized that separate convictions would be proper if Congress so intended, but found that the congressional purpose was left unclear in this regard. A principle of lenity was declared:

When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. . . . *[D]oubt will be resolved against turning a single transaction into multiple offenses,* when we have no more to go on than the present case furnishes. (Emphasis supplied.)

349 U.S. at 83–84, 75 S.Ct. at 622, 99 L.Ed. at 910–11.

In *Prince v. United States,* 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 the Court held that consecutive sentences were improper on separate counts brought under 18 U.S.C. § 2113 of bank robbery and entering a bank with intent to commit a felony. The Court relied in part on the congressional history showing the reason for adding an

---

**4.** *United States v. Curry,* 4 Cir. 1975, 512 F.2d 1299, *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50; *United States v. Atkinson,* 4 Cir. 1974, 512 F.2d 1235.

**5.** *United States v. Oropeza,* 9 Cir. 1977, 564 F.2d 316, *cert. denied,* 1978, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788.

**6.** *United States v. Stevens,* 6 Cir. 1975, 521 F.2d 334. *See also* the excellent discussion by

Judge Feikens in *United States v. Nichols,* E.D. Mich.1975, 401 F.Supp. 1377.

**7.** *United States v. Olivas,* 10 Cir. 1977, 558 F.2d 1366, *cert. denied,* 434 U.S. 866, 98 S.Ct. 203, 54 L.Ed.2d 142.

**8.** *United States v. Howard,* 8 Cir. 1974, 507 F.2d 559.

additional offense to the bank robbery statute and the absence of any evidence of an intention to pyramid the penalties. *See also Heflin v. United States,* 1959, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (applying the principle of lenity). *Compare Milanovich v. United States,* 1961, 365 U.S. 551, 81 S.Ct. 728, 5 L.Ed.2d 773.[9] No historical clues, however, can be found with respect to the controlled substances statute.

However, we are guided by the policies set forth in *Bell, supra,* and, at least to some degree renewed in *Prince, supra.* The sentence for possession with intent to distribute combined with the consecutive sentence for distribution imposes double punishment for conduct that, under the facts of this case, merges into a single offense. The evidence of the sale was relied upon to prove both Hernandez's constructive possession of the heroin and his intention to distribute it. There was no evidence of Pete's possession of a controlled substance with intent to distribute it apart from the evidence of the actual sale. When the intent to distribute was executed by a successful sale, the possession with intent to do so merged into the completed offense. *See United States v. Curry,* 4 Cir. 1975, 512 F.2d 1299, 1306, *cert. denied,* 423 U.S. 832, 96 S.Ct. 55, 46 L.Ed.2d 50.

Obviously, our opinion does not concern the situation where there is separate evidence of possession with intent to distribute and evidence of distribution in one or more different transactions.[10] The issue today

considered is narrow, and we decide no more than is necessary to carry out what we perceive to be congressional intent in the specific circumstances before us.

For these reasons, we affirm the conviction but remand the case to the trial court for resentencing.

AFFIRMED and REMANDED.

AINSWORTH, Circuit Judge, with whom COLEMAN, GEE and TJOFLAT, Circuit Judges, join, dissenting:

I dissent from the majority opinion of the court by Judge Rubin which affirms the conviction of defendant Pete Hernandez but vacates one of the sentences imposed because in the majority's view "[t]he sentence for possession with intent to distribute combined with the consecutive sentence for distribution imposes double punishment for conduct that, under the facts of this case, merges into a single offense." Accordingly, the case is remanded for resentencing of the defendant.

Pete Hernandez was convicted both of possession with intent to distribute and distribution of heroin in violation of the same statute, 21 U.S.C. § 841(a)(1), and received consecutive sentences of imprisonment of ten years, a total of twenty years' imprisonment, and special parole terms of twenty years on each of a two-count indictment, a total of forty years' special parole term.[1]

The majority opinion states:

> more and more by different legal devices, the traffic in narcotics.
> 357 U.S. at 391, 78 S.Ct. at 1284, 2 L.Ed.2d at 1409.

**9.** We do not deal here with the violation of separate statutes, the issue involved in *Blockburger v. United States,* 1932, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 and in *Gore v. United States,* 1958, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, but with the interpretation of two phrases in one sentence of a single law. In *Gore* the Court said, in distinguishing *Bell v. United States,* 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905:

> It is one thing for a single transaction to include several units relating to proscribed conduct under a single provision of a statute. It is a wholly different thing to evolve a rule of lenity for three violations of three separate offenses created by Congress at three different times, all to the end of dealing more and more strictly with, and seeking to throttle

**10.** Nor does this opinion reach a simultaneous prosecution for simple possession, 21 U.S.C. § 844(a), and distribution, 21 U.S.C. § 841(a)(1). *See* notes 3 and 9, *supra.*

**1.** The grand jury indictment reads as follows:

> COUNT I
> That on or about January 8, 1975, within the Corpus Christi Division of the Southern District of Texas, and within the jurisdiction of this Court, PEPE ACOSTA HERNANDEZ and PETE HERNANDEZ, defendants, did unlawfully, knowingly, and intentionally possess with intent to distribute a controlled

The evidence of the sale was relied upon to prove Hernandez's constructive possession of the heroin and his intention to distribute it. There was no evidence of Pete's possession of a controlled substance with intent to distribute it apart from the evidence of the actual sale. The majority also states that its ruling is based on an issue considered to be "narrow," and is decided only on the specific circumstances of the case. As the court noted:

[O]ur opinion does not concern the situation where there is separate evidence of possession with intent to distribute and evidence of distribution in one or more different transactions. The issue today considered is narrow, and we decide no more than is necessary to carry out what we perceive to be congressional intent in the specific circumstances before us. (footnote omitted)

The decision the court now reaches is an important one, with possible far-reaching consequences. I am unable to agree with the rationale of the opinion, or the rule which it establishes, since, under the facts and circumstances of this case, it can be demonstrated that there is separate evidence to sustain the conviction of both possession with intent to distribute and distribution, warranting the consecutive sentences imposed by the court. None of the facts is set forth in the majority opinion, reference being made by Judge Rubin to his prior panel opinion which reviews the evidence. Nevertheless, this case is better considered as to whether there is separate evidence of both possession with intent to distribute and distribution, by a more complete scrutiny of the specific facts and circumstances. Having read the record fully in this case, I am satisfied that the abstract of testimony set forth in the Government's original brief is accurate. Accordingly, it is reproduced in pertinent part as follows (Gov. orig. brief, pp. 2–6):

On January 7, 1975, at approximately 10:00 p.m., Bryan Maas[2] and Jack Pitts, Special Agents with the Drug Enforcement Administration who were acting in an undercover capacity, were introduced to appellant and codefendant, Pepe Acosta Hernandez, at a lounge in Corpus Christi, Texas, by government informant, Mary Contreras (R. 59–61).

Agents Maas and Pitts met with the appellant and co-defendnt Pepe Acosta Hernandez in order to negotiate for the purchase of heroin. Agent Maas inquired of both the appellant and co-defendant Pepe Acosta Hernandez if they could supply him with large amounts of heroin within a short period of time. According to Maas, both appellant and Pepe Acosta Hernandez informed him that they could handle up to kilogram quantities of heroin (R. 62).

Agent Maas informed the appellant and co-defendant Hernandez at this time that he wanted to purchase an ounce of heroin. However, he requested they provide him with a sample of heroin prior to his purchasing the ounce quantity. According to Agent Maas, the appellant and co-defendant Hernandez agreed to fur-

substance under Schedule I of the Controlled Substances Act of 1970, to-wit: approximately Twenty-Four (24) grams of heroin. (Violation: Title 21, United States Code, Section 841(a)(1))

COUNT II

That on or about January 8, 1975, within the Corpus Christi Division of the Southern District of Texas, and within the jurisdiction of this Court, PEPE ACOSTA HERNANDEZ and PETE HERNANDEZ, defendants, unlawfully, knowingly, and intentionally did distribute approximately Twenty-Four (24) grams of heroin, a controlled substance under Schedule I of the Controlled Substances Act of 1970. (Violation: Title 21, United States Code, Section 841(a)(1))

Pepe Acosta Hernandez was jointly indicted with the present defendant, Pete Hernandez, but not tried jointly with him in this case since apparently he was at large and had not been arrested (R. 17).

Though the codefendants are shown as having the same last name, Hernandez, they are not brothers. Pepe Acosta Hernandez is actually Pepe Acosta and defendant Pete Hernandez met him when they were working for Harris Concrete in March 1973 where they became friends (R. 10, 113–114).

2. "Maas" is spelled "Maz" in the original transcript.

nish him with the one gram sample that he had requested prior to purchasing the ounce quantity of heroin (R. 63).

Agent Maas and Agent Pitts observed both the appellant and co-defendant Pepe Acosta Hernandez leave the lounge in a black cadillac. At approximately 11:30 p.m., the appellant and co-defendant Pepe Acosta Hernandez returned to the lounge and co-defendant Hernandez handed Agent Maas a small, tinfoil wrapper containing brown powder which appeared to be heroin (R. 64).

Agent Maas at this time informed both the appellant and co-defendant Pepe Acosta Hernandez that he would go ahead and purchase the ounce of heroin for $1,000. Agent Maas complained to both the appellant and co-defendant Hernandez that the price for the ounce of heroin was too high. At this time co-defendant Pepe Acosta Hernandez said, "well, let me see if we can do something" (R. 64) and asked appellant to step away from the table for a moment where they had a brief discussion. When they came back to the table where Agents Maas and Pitts were sitting, both the appellant and co-defendant Hernandez informed Maas and Pitts that they would have to pay $1,000 this time (R. 64–65).

Agent Maas agreed at this time that he would purchase the ounce quantity of heroin for $1,000. After he agreed to pay the $1,000 for the heroin, appellant and co-defendant Hernandez had another short, brief conversation out of the agents' presence. After this conversation, co-defendant Pepe Acosta Hernandez left the lounge, returning approximately 35 minutes later at 12:30 a.m. (R. 65).

The appellant stayed with Agents Maas and Pitts at the lounge while his co-defendant went to obtain the heroin. During the 35 minute interval that co-defendant Hernandez was gone, the appellant informed Maas and Pitts that he could supply them with whatever quantity of heroin that they wanted and that he had sold a pound of heroin that very day (R. 66).

When co-defendant Hernandez returned to the lounge, he bent over the table to talk to the appellant for a minute. After this brief conversation between the two men, at Agent Maas' instruction, co-defendant Hernandez and Agent Maas went to the men's room of the lounge where co-defendant Hernandez handed an ounce of heroin to Maas (R. 67).

When Agent Maas returned to the table, he informed the appellant and co-defendant Hernandez that he wanted to purchase at least two ounces of heroin that same day. At this time the appellant informed Agent Maas that he owned a lounge over on Port Street and that he could supply the two ounces if Agent Maas would come over there that evening, which was the evening of January 8, 1975. At this time, the appellant took a cocktail napkin and wrote his name and phone number on the napkin to give to Agent Maas so he could contact him regarding the further purchase of heroin (R. 68–69).

Agent Pitts' testimony corroborated that of Agent Maas and verified that he and Maas met with the appellant and co-defendant Acosta Hernandez to discuss the purchase of quantities of heroin (R. 90). Pitts reiterated that when co-defendant Hernandez went to get the ounce quantity of heroin that the appellant stayed behind at the lounge with Agents Pitts and Maas. At this time the three discussed future transactions concerning kilogram quantities of heroin. After the ounce delivery of heroin was made, further negotiations transpired concerning the future purchase of heroin. So that Pitts and Maas would be able to easily contact the appellant, he wrote his name and place of business and phone number on a cocktail napkin which he then handed to Agent Maas (R. 92).

\* \* \* \* \* \*

Agent Pitts then testified that later on the evening of January 8, 1975, that he and Agent Maas purchased another two

ounces of heroin from the appellant. At this time he and Agent Maas conversed with the appellant regarding the establishment of a weekly purchase of heroin from both appellant and co-defendant Acosta Hernandez (R. 96). Shortly after these negotiations transpired co-defendant Acosta was arrested. The agents continued trying to negotiate with the appellant at this time and for a while could not locate the appellant. It was not until they determined that the appellant was also in prison that they decided to go forward and indict on the purchases that had already been made.

The appellant took the stand in his own behalf and testified that he had never had any conversations with Agents Pitts, Maas or co-defendant Acosta Hernandez concerning the sale or purchase of heroin. The appellant further testified that he had never bought, sold or been involved with the sale or purchase of heroin (R. 120). The appellant also denied that he had ever written his name and phone number on a cocktail napkin and handed it to Agents Pitts or Maas. According to the appellant, he did not learn of the nature of the conversations between co-defendant Acosta Hernandez and Agents Pitts and Maas until some two weeks later when Acosta Hernandez informed him that they were talking about automobiles (R. 132). Appellant also denied ever leaving the New Orleans lounge on the night in question with co-defendant Acosta Hernandez and returning approximately 35 minutes later and rejoining Agents Pitts and Maas at their table. The appellant also denied meeting Agents Pitts and Maas later the evening of January 8 at Ruben's Lounge (R. 133).

Agent Maas was called to the stand during rebuttal and testified that he had met with the appellant at a place called Ruben's Lounge on Port Street in Corpus Christi, Texas at approximately 8:00 p.m. on January 8, 1975 (R. 144).

The statute under which defendant was charged in the two-count indictment is clearly stated in unambiguous language. It reads in pertinent part as follows:

*Title 21, U.S.C., § 841*

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance;

\*　　\*　　\*　　\*　　\*　　\*

(b) Except as otherwise provided in section 845 of this title, any person who violates subsection (a) of this section shall be sentenced as follows:

(1)(A) In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000. or both.

\*　　\*　　\*　　\*　　\*　　\*

Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment

. .　..

\*　　\*　　\*　　\*　　\*　　\*

The conduct made unlawful by the quoted section as it pertains to this case, that is, the offenses of possession with intent to distribute and distribution, is listed in the disjunctive and there is nothing in the statutory provisions to indicate that they merge or that one is subordinated to another. The law pertaining to the matter is aptly stated in our opinion for the panel in *United States v. Horsley,* 5 Cir., 1975, 519 F.2d 1264, 1265–66, in which we considered an identical contention to the one raised here by the defendant, Hernandez, as follows:

II. *Denial of Merger of Possession and Sale Counts*

■ Appellants contend that the offenses of possession with intent to distribute and distribution should have been merged, because possession with intent to distribute is a lesser included offense of distribution. Both offenses were violations of 21 U.S.C. § 841(a)(1), which provides:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance . . . .

This Circuit applies the "different evidence" test, according to which "convictions for separate offenses arising from a single fact pattern are upheld if each statute proscribing the conduct requires proof of different facts and different elements as to each separate offense." *United States v. Hill,* 5 Cir., 1974, 500 F.2d 733, 740 (use of common carrier for carriage of obscene films in interstate commerce and transporting obscene films for purpose of sale or distribution do not merge). In *United States v. Costello,* 5 Cir., 1973, 483 F.2d 1366, we held that possession of LSD under 21 U.S.C. § 844(a) and distribution under § 841(a)(1) were separate offenses, since the former was complete on receipt of the drugs from a third party, whereas the latter required transfer to a third party. 483 F.2d at 1368.

The different evidence test referred to is based on the Supreme Court's decision in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), in which the Court affirmed convictions with consecutive sentences for the offenses of selling prohibitive drugs not in their original stamped package, and of selling such drugs without a written order of the person to whom such article is sold, which grew out of one sale. In *Blockburger* the Court held:

> Each of the offenses created requires proof of a different element. The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

The literal disjunctive provisions of 21 U.S.C. § 841(a)(1), the section involved here, on their face show the creation of distinct and separate offenses for possession with intent to distribute and distribution. The manifest intent here is expressed in the words of the statute itself whose literal meaning does not offend against a finding of multiple offenses growing out of the criminal activity in this case. Under the specific facts the jury, pursuant to the court's instructions, found the defendant, Hernandez, guilty of separate counts of possession with intent to distribute and distribution. The original panel opinion agreed that these convictions and sentences should be affirmed, but disagreed with the court's prior line of authority in *Horsley* and *Costello, supra,* and *United States v. Young,* 5 Cir., 1973, 482 F.2d 993, and suggested that these cases not be followed in this case. En banc consideration followed. It is implicit in the panel opinion's holding, however, that the evidence was sufficient to show both possession and distribution on the part of defendant; otherwise, the convictions should have been reversed by the panel for insufficiency of the evidence, as appellant, Pete Hernandez, in his original brief to the panel, contended.

The so-called "single transaction" involved in this case has several separate parts. The factual background begins with the initial meeting of the parties, the two DEA undercover agents, Maas and Pitts, and Pepe Acosta Hernandez and Pete Hernandez, on January 7, 1975 at 10 p.m. in the lounge in Corpus Christi. After discussion pertaining to the purchase of heroin, the defendant, Pete Hernandez, and codefendant Pepe Acosta Hernandez left the lounge together in a black Cadillac and returned at about 11:30 p.m. with a one-gram sample of heroin (requested by the DEA agents) wrapped in tinfoil, which they gave to the agents. After haggling over price of a one-ounce purchase, Pepe Acosta Hernandez left the lounge again and returned at about 12:30 a.m., having been away about 35 minutes, with an ounce of heroin which he brought to the table where the parties were meeting and arranged to deliver the heroin to one of the undercover agents in

the men's room of the lounge on payment of $1,000. Defendant Pete Hernandez offered to supply additional quantities of heroin to the undercover agents and wrote his name and telephone number on a cocktail napkin so he could be contacted. Later that same evening, at about 8 p.m., the two agents purchased another two ounces of heroin from defendant Pete Hernandez. The latter transaction was not charged, however, in the indictment. Under the circumstances, a jury could reasonably infer possession on the part of defendant Pete Hernandez and codefendant Pepe Acosta Hernandez prior to the actual distribution so that in point of time the single transaction divided into parts, clearly identifying the separate nature of possession and distribution. As to the possession with intent to distribute count, the record shows a continuity of action on the part of defendant Pete Hernandez from at least 10 p.m. on January 7 to 8 p.m. on January 8—certainly a long enough period to demonstrate a substantial period of possession for the time indicated. Thus we are justified in disagreeing with the majority's conclusion that there is no evidence of Pete's possession apart from the actual sale.

The majority opinion poses the question for determination as follows:

> The present case requires us solely to consider the intent of Congress in enacting this provision: did it intend to make a single delivery of narcotics punishable as two separate offenses—one, possession with intent to distribute and the other, the actual distribution—or did it define alternative offenses, one requiring proof of fewer facts than the other? The legislative history is silent on this point.

But in a speculation as to congressional intent concerning the statutory provision herein, the majority relies on *Bell v. United States,* 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), a Mann act case, where the Supreme Court held that ambiguity in a criminal statute should be resolved in favor of lenity, 349 U.S. at 83–84, 75 S.Ct. at 622. However, the majority opinion concludes that "[n]o historical clues, however, can be found with respect to the controlled substances statute." We differ somewhat with this conclusion since there are pertinent historical aspects of the Comprehensive Drug Abuse Prevention and Control Act of 1970 of which section 841(a)(1) is a part. In the House Report No. 91–1444, Part I, 91st Cong., 2d Sess., of the Committee on Interstate and Foreign Commerce, 1970 U.S. Code Cong. & Admin.News, pp. 4566, 4575, there is an approving reference to the Report of the President's Advisory Commission on Narcotic and Drug Abuse, the Prettyman Commission, which states the Commission's general philosophy, that "[t]he illegal traffic in drugs should be attacked with the full power of the Federal Government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive." If the precise congressional intent is susceptible of ascertainment, which is very doubtful, the House Report referred to may be considered as supporting an intention to exact strict compliance with the drug abuse laws. The Supreme Court indicated as much as to prior narcotics laws in *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), where the Court on the authority of its prior *Blockburger* decision, rejected the merger of offenses in a single transaction theory (put forth here) and held that one transaction could produce multiple infractions of the law. The Court significantly said (357 U.S. at 390, 78 S.Ct. at 1283):

> Of course the various enactments by Congress extending over nearly half a century constitute a network of provisions, steadily tightened and enlarged, for grappling with a powerful, subtle and elusive enemy. If the legislation reveals anything, it reveals the determination of Congress to turn the screw of the criminal machinery—detection, prosecution and punishment—tighter and tighter.

The Court observed that its holding in the *Gore* case was completely (*toto coelo*) different from its decision in *Bell,* and continued (357 U.S. at 391–392, 78 S.Ct. at 1283–1284):

Both in the unfolding of the substantive provisions of law and in the scale of punishments, Congress has manifested an attitude not of lenity but of severity toward violation of the narcotics laws. Nor need we be detained by two other cases relied on, *United States v. Universal C. I. T. Credit Corp.,* 344 U.S. 218, 73 S.Ct. 227, 231, 97 L.Ed. 260, and *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370. In the former we construed the record-keeping provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., as punishing "a course of conduct." Of the *Prince* case, it suffices to say that the Court was dealing there "with a unique statute of limited purpose." 352 U.S. at page 325, 77 S.Ct. at page 405.[3]

It is inappropriate, therefore, to speak of lenity of punishment as an object of congressional intent in connection with narcotics offenses. The contrary, severity, as the true intent of Congress in enforcing the drug abuse laws, appears more realistic.

---

**3.** The *Prince* decision is one of the major pillars supporting the majority's view in this case. However, the Bank Robbery Act involved in *Prince* is entirely different in language and intent from the drug abuse statute being considered here. In *Prince* the Court discerned the congressional intent from the particular words of the Act, and by reference to historical background, especially to letters by the Attorney General to Congress concerning the proposed legislation. Thus the Court properly concluded in its subsequent decision in *Gore* that the Bank Robbery Act was "a unique statute of limited purpose," and therefore inapposite.