UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank J. MERLINO,
Defendant-Appellant.

No. 77–5708.

United States Court of Appeals,
Fifth Circuit.

May 22, 1979.

Rehearing Denied July 30, 1979.

Richard M. Gale, Michael A. Masin, Michael J. Rosen, Miami, Fla., for defendant-appellant.

Jack V. Eskenazi, U. S. Atty., Stephen M. Pave, Linda Collins Hertz, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and THORNBERRY, Circuit Judges.

TUTTLE, Circuit Judge:

This appeal from a conviction on one count of possession of a controlled substance with intent to distribute and on another count for distribution of a controlled substance in violation of 21 U.S.C. § 841(a)(1) urges primarily prosecutorial misconduct as a basis for reversing. It also attacks consecutive sentences where it is alleged that the one act of distribution of a controlled substance will also support a sentence of possession with intent to distribute. Other errors are alleged which are of less importance in our consideration of the appeal.

## I. STATEMENT OF THE CASE

There was ample evidence given by Agent Fernandez of the United States Drug Enforcement Administration from which the jury could readily find beyond a reasonable doubt that after some preliminary negotiations Merlino delivered 223.6 grams of cocaine of 42.7 percent purity to Fernandez for $8,000. The testimony by Fernandez was supported by one Daniel Cacy, an unsavory character who, the jury could find, had originally tipped off the DEA to the possibility of making a case against Merlino in order to pay off for the state's dismissing a pending narcotics case against him in the state court. There can be no doubt but that the jury would have been hard put to believe anything testified to by Cacy if it had not been for the corroborating evidence of Fernandez and surrounding circumstances.

The jury believed the government's witnesses and found Merlino guilty on both counts. It is clear that the only possession which the jury could find was the one act of possession which occurred at the moment of sale to Fernandez.

## II. PROSECUTORIAL MISCONDUCT

■ Before, during, and after the trial, the defendant's counsel filed no less than seven motions for dismissal of the indictment based on alleged prosecutorial misconduct. The appellant characterizes the failure of the prosecutor's office to produce certain *Brady*[1] material in response to an outstanding pre-trial order as "outrageous," "deceitful," "deliberate," "misleading" and highly prejudicial. Appellant uses the same pejorative allegations in his brief in this court, stating that such conduct, together with an alleged use of a grand jury proceeding for pre-trial preparation of its case, was so "outrageous" as to require the court in its supervisory capacity to dismiss the indictment. In this respect, the appellant is in the position of asking for a dismissal with no alternative of the grant of a new trial, because after substantially all of the occurrences of which he now complains, the trial court expressly placed upon the defendant a burden of deciding whether he wished to move for a mistrial. The defendant elected not to do so, standing on his motion for a dismissal of the indictment.

The record discloses that there was some *Brady* material and some *Jencks* material withheld by the government, until long after it should have been given to the defendant. As to this, the magistrate, who recommended that a motion for dismissal of the indictment be denied, did find that certain responses from the prosecutor's office were "false." In this connection, the magistrate said during the hearing:

THE COURT: I realize that may not be your fault. I don't want to hear of the Government having done anything to thwart the process of the court. On the contrary, I want to know what the Government is doing, whether it is doing all in its power to assist the court in having its process honored. I don't know what more obligation we can do at this stage.

I am satisfied at this point, Mr. Pave, that you have not yourself, or anyone that you are aware of, thwarted the process. I am also concerned, however, that in the past in this case you have relied on

---

**1.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

statements made to you by other law enforcement officers, which had been patently false. You filed responses in this case stating there was no information favorable to Mr. Merlino concerning the *in camera* material. That was not true.

However, the magistrate exculpated the trial counsel by stating:

I am satisfied that you didn't know that it was not true when you said it, but the point is that you have relied on some misrepresentations by other law enforcement officers that were not reliable, and I want to caution you and place upon you the burden to do some independent investigation, if it becomes necessary, in a given context and not to make representation based on what other people have told you. This is what I am telling you.

In her report to the court the magistrate said:

Although the conduct of the government in its representations to the court concerning the nature of material ultimately examined *in camera* and required to be disclosed in this case has not been praiseworthy, it does not require dismissal of this indictment.

The trial court adopted the report and order of the magistrate.

Another basis for the appellant's charge of prosecutorial misconduct is the fact that after Merlino's indictment, and before trial, a substantial number of the witnesses who had been subpoenaed by the defendant to testify at the trial were subsequently subpoenaed by the government to appear before a grand jury. It developed that during the course of the grand jury proceedings, one of the witnesses was asked by the U. S. attorney whether he had interviewed Mr. Masin (defendant's counsel of record) and if so, what did he discuss with him. As to this, the magistrate commented that: "There is every reason to believe that the government improperly used the grand jury of this court to discover testimony of witnesses subpoenaed by the defendant." Further, speaking to the questioning by the prosecutor of one of the defense witnesses

before the grand jury on this conversations with defense counsel, the trial court said: "Well, that's pretty gross. That's pretty gross; improper use."

The difficulty with appellant's position here is twofold. In the first place, this court has held that in the case of even the most egregious prosecutorial misconduct, which the trial court did not find here, the dismissal of an indictment in such a case must depend upon a showing of actual prejudice to the accused. Both the magistrate and the trial court concluded that no such prejudice had been established here. While it is evident that defense counsel was thrown off balance somewhat by the late production of materials in possession of the prosecution, a careful reading of the record convinces us that no actual prejudice occurred. In the second place, there can be no partial relief granted to the appellant by way of the grant of a new trial. This results from the fact that upon the express invitation of the trial court to make such a motion, the defendant declined to do so, standing firmly on his alleged right to have the indictment dismissed.

## III. GRAND JURY TESTIMONY OF WITNESS FERNANDEZ

The appellant complains bitterly of the failure of the trial court to require the United States to produce the grand jury testimony of its principal witness Fernandez. The demand for this testimony created a real "tempest in a teapot." The government initially responded that it had no record of Fernandez having testified before the grand jury. It stated that it had no recorded testimony of Fernandez. However, it was later discovered that the witness had testified before the grand jury but the government reported that it was unable to find a transcript of his testimony.

■ In its brief before us, the government blandly takes the position that "the *Jencks* Act does not require the government to produce that which it does not have in its possession," citing *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977). The

argument that when grand jury proceedings have been recorded but not transcribed, the government does not have them in its possession is nothing short of ridiculous. Certainly, if an FBI agent should testify as a witness against a defendant in a criminal prosecution, and the latter demands any written statements made by him relating "to the subject matter of the testimony" the government can't refuse merely because the FBI's statement is in shorthand and has not been transposed in a manner to be read by others. That is precisely the situation which faced the court here and the court recognized it and ordered the transcript to be prepared and submitted to it. This, however, was not accomplished until after the trial was completed.

■ The appellant does not argue that the failure of the trial court to examine it before the end of the trial would automatically entitle him to a new trial. He states:

> [I]f after an *in camera* examination, there is an arguable factual basis for concluding that some or all of said grand jury testimony related to the subject matter as to which the witness testified at the trial, then this Court should make available to all counsel such portions of that grand jury testimony, and the cause should be remanded to the District Court to conduct such further adversary hearing as appropriate, *United States v. Rivero*, 532 F.2d 450 (5th Cir. 1977).

Appellant's Brief, p. 28. While the court followed that procedure in *Rivero*, it was necessary to do so because the transcript of the grand jury testimony in that case was not before this Court. Here, however, the sealed document has now been opened and we have carefully compared it with Agent Fernandez' testimony at the trial and find that there is no "substantial inconsistency, contradiction or variation" in the testimony given on the two occasions. A copy of this unsealed testimony was also furnished to the appellant. We conclude that no prejudice has resulted to the defendant as a result of the trial court's failure to require the production of the document during the trial.

## IV. THE INAUDIBLE TAPE

■ During the course of the trial the government's principal witness Fernandez testified to having recorded a conversation as to which he also testified from the witness stand. The recorded tapes had been submitted to defense counsel long before trial. Some objections were made on the ground that part of the tapes were unintelligible. Thereafter, the government furnished defense counsel with a transcript which it reported had been prepared by Fernandez. Then at the trial, there was some discussion as to how much of the tapes were intelligible, whereupon the judge stated that he would listen to the transcript as it was played, that he would distribute the transcript to the jury but instruct them not to get ahead of what they might hear. The court stated that it would then stop the recording and withdraw the transcripts in the event the tape was unintelligible. The court then expressly asked whether there was objection to the publishing of the tape and counsel responded: "No, Sir." Very shortly thereafter, it appeared that the recording was unintelligible and the trial court withdrew all of the transcripts. It then permitted the total recording to be completed but the quality was so poor that the court instructed the jury to disregard the tapes completely. We conclude that no prejudicial error resulted from the manner of handling this tape or the transcripts.

## V. CHALLENGE TO THE JURY PANEL

■ Two months following the conclusion of his trial, the appellant filed a motion to dismiss the indictment for failure to comply with the Jury Selection Act, Title 28 U.S.C. § 1863(b)(2)(4) and for failure to comply with Jury Selection and Service Act of 1960 as amended. The basis of the complaint is that the jury before which he was tried was selected from names drawn from a 1973 master jury wheel. Under the statute, the Miami qualified wheel was refilled about two and one half months late, on September 9, 1977, whereas the jury in this case was empaneled on August 22, 1977.

The fatal difficulty with this contention is that the statute provides that:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, *whichever is earlier*, the defendant may move to dismiss the indictment or stay the proceedings against him, etc. (emphasis added)

Subsection (e) provides:

> The procedures prescribed by this section shall be the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge on the ground that such jury was not selected in conformity with the provisions of this title.

This Court has applied this standard in all its strictness in *United States v. De Alba-Conrado*, 481 F.2d 1266 (5th Cir. 1973) and in *United States v. Kennedy*, 548 F.2d 608 (5th Cir. 1977). In the latter case, this Court said:

> The courts have strictly enforced both the timeliness and sworn statement requirements of § 1867. This court has refused to consider a statutory challenge raised after the empanelling of a jury. *See United States v. De Alba-Conrado*, 481 F.2d 1266 (5th Cir. 1973).

548 F.2d at 613.

## VI. CONSECUTIVE SENTENCES

 Merlino was indicted under an indictment in two counts, the first of which charged that he did "knowingly intentionally possess with intent to distribute a controlled substance . . ." in violation of Title 21 U.S.C. § 841(a)(1) and the second of which charged that he "did knowingly and intentionally distribute a controlled substance . . ." in violation of Title 21, U.S.C. 841(a)(1).

The relevant Code section provides:

841. Prohibited Acts—Unlawful Acts.

> (a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
>
> > (1) to . . . distribute . . . or possess with intent to . . . distribute . . . a controlled substance . . ..

Thus, the indictment charges two separate crimes arising under a single subparagraph of § 841(a). It is also clear from the evidence in this case that Merlino's conviction of the two counts results from a single act, that is, the sale of approximately one-half pound of cocaine by Merlino to Fernandez, the DEA agent.

The determination of this case has been withheld pending the decision of the Court en banc of *U. S. A. v. Hernandez*, 580 F.2d 188 (1978). *Hernandez* has now been decided by the en banc Court, *U. S. A. v. Hernandez*, 591 F.2d 1019 (1979). It controls the decision here. The evidence of the sale was relied upon to prove both Merlino's constructive possession of the cocaine and his intention to distribute it. Both sentences cannot stand.

## VII. CONCLUSION

We have given careful consideration to the appellant's criticism of the sentencing procedure and the other matters complained of and find that they do not merit discussion.

We affirm the judgment of conviction but remand the case to the trial court for sentencing.

AFFIRMED and REMANDED.