**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Ellen Lou FOUNDAS,
Defendant-Appellant.**

No. 79–5054.

United States Court of Appeals,
Fifth Circuit.

Jan. 23, 1980.

William P. Cagney, III, Miami, Fla., for defendant-appellant.

Linda Collins-Hertz, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before JONES, BROWN and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

That neither the First Amendment nor the constitutional right to privacy is violated when a conversation is recorded by one of the participants· is now settled. *United States v. Rangel*, 5 Cir. 1974, 488 F.2d 871, *cert. denied*, 416 U.S. 984, 94 S.Ct. 2386, 40 L.Ed.2d 760; *Koran v. United States*, 5 Cir. 1969, 408 F.2d 1321, *cert. denied*, 1971, 402 U.S. 948, 91 S.Ct. 1603, 29 L.Ed.2d 118.[1]  The contention here ad-

---

**1.** *Compare* 18 U.S.C. § 2511(2)(c), which provides:

It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception. Judicial authorization to record the conversations was not, therefore, necessary because the

vanced that privacy is invaded if an undercover agent, instead of placing recording or transmitting devices on his person, conceals a transmitter in his motel room so that conversations with him occurring there are transmitted to another location for recording is too faint to broadcast beyond this opinion. *See United States v. White*, 1971, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453.[2]

Because the trial was to the court on a stipulation of what the witnesses would have testified, together with the introduction of a transcript of the transmitted conversation, only legal issues remain. We determine them in this clarified atmosphere.

Pursuant to arrangements made by telephone with one of the co-defendants to buy cocaine, an undercover agent of the Drug Enforcement Administration met Ellen Lou Foundas in a motel bar. The female who had made the telephone arrangements and one other female joined the group. In the course of a lengthy conversation, Ms. Foundas said she had one kilo of cocaine ready for sale with another available within 30 minutes if the first was satisfactory.

The agent insisted that the transfer of cocaine take place in his motel room where transmitting devices had been concealed. The agent and two of the women went upstairs to wait for Ms. Foundas. When she did not join them, they returned to the motel lobby to look for her. When she was located they all proceeded to the agent's room. (The government argues that during her absence Ms. Foundas must have obtained the cocaine from a hiding place.) What was said in the motel room was transmitted to another room where it was recorded by other DEA agents. In the room Ms. Foundas removed a brown paper bag from her purse and took from it a clear plastic bag containing 998 grams of 72% pure cocaine. Another agent brought the group a briefcase containing money. Co-defendants counted the money and began to retrieve the price agreed on from the briefcase. The agent then arrested all three in the selling group. Thereafter, Ms. Foundas was indicted on three counts: (1) conspiracy to violate the drug control laws (21 U.S.C. § 846); (2) possessing cocaine with intent to distribute it (21 U.S.C. § 841) and (3) distributing cocaine (21 U.S.C. § 841(a)(1)).

It is also stipulated that Ms. Foundas would have testified that she was asked by one of the co-defendants, who was a friend, to deliver a package to the motel. She was told by her friends that there was a sale of coke arranged, that what she would actually sell would be lidococaine not cocaine, and she was to help persuade the dupe, a civil lawyer, that it was coke.

After reviewing the stipulation and the transcript of the hotel room conversations, the trial court found Ms. Foundas guilty on all counts and sentenced her to two years on each count, to run concurrently, with provision for release at the discretion of the Parole Commission pursuant to 18 U.S.C. § 4205(b)(2), and five years mandatory pro-

---

interception was carried out with the consent of one of the parties to the conversations—the undercover agent. *See United States v. Mendoza*, 5 Cir. 1978, 574 F.2d 1373, 1377, *cert. denied*, 439 U.S. 988, 99 S.Ct. 584, 58 L.Ed.2d 661 (1979).

**2.** The recorded statements were made in the hotel room of a man Ms. Foundas had just met, in the presence of the agent and two other women.

Ms. Foundas claims that some of the conversation in the agent's hotel room was not directed at the agent and, therefore, the agent (and the hidden microphone) could not testify regarding those portions of the conversation; this does not bear analysis in the light of the stipulated facts. They and the transcript introduced at trial show a general conversation by four adults in a motel room. There is no indication in the stipulation or transcript of sotto voce remarks or whispered asides. At any rate, if secret conversations were recorded, the burden of proof was on the party seeking to suppress the tapes. *See United States v. Evans*, 5 Cir. 1978, 572 F.2d 455, 486, *cert. denied sub nom.* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182.

The appellant's concern about government placement of "similar devices without a warrant in thousands of places" is not justified by the events that happened here. If the concerns should not prove Orwellian, we shall face the problem when it arises. See Justice Jackson's remarks in *On Lee v. United States*, 1952, 343 U.S. 747, 754, 72 S.Ct. 967, 972, 96 L.Ed.2d 1270.

bation. He refused to suppress the recordings, and, for reasons we have already stated, we agree with his decision.

A paper blizzard of 29 motions was presented to the district court. Most were referred to a magistrate for recommendation. As a result of the flurry, the court failed to review her recommendations on one of the motions, but counsel, perhaps lost in his own storm, failed to draw the judge's attention to the matter as required by the local rules of court governing appeals from magistrate's rulings.

■ The appellant now objects both to the magistrate's making recommendations on various motions to dismiss and to the court's failure in the instance mentioned to review them. The plaintiff's motions to dismiss related to two issues: the method of jury selection and the alleged irrational classification of cocaine as a narcotic drug. The first issue was presented through several motions. It was proper for the magistrate to make preliminary findings on these motions until they had reached a point where the judge could review them all and dispose of defendant's principal argument in one shot rather than piecemeal. *Cf.* 28 U.S.C. § 636(b)(1)(A) (magistrate cannot finally determine motions to dismiss). The magistrate merely made recommendations that were reviewed by the judge who also considered all the supporting documents. The ultimate disposition was by the judge. This procedure is clearly valid. *See* 28 U.S.C. § 636(b)(1)(B).

■ The motion never acted on by the judge contended the statute was unconstitutional. This also was considered by the magistrate who recommended its denial. Even if the defendant cannot be said to have waived her right to a judge's determination of this issue, the error if any was harmless because of the clear legal precedent that cocaine is a narcotic drug within the meaning of the act. *See e. g., United States v. Solow*, 5 Cir. 1978, 574 F.2d 1318; *United States v. Harper*, 9 Cir. 1976, 530 F.2d 828, *cert. denied*, 429 U.S. 820, 97 S.Ct. 66, 50 L.Ed.2d 80. *See also United States v. Levine*, 5 Cir. 1977, 546 F.2d 658.

■ Ms. Foundas also contends that the Parole Commission guidelines, 28 C.F.R. § 2.12(a), adopted pursuant to statute, 18 U.S.C. § 4203, are automatically applied, hence invalid. The short answer is that this argument is premature. Ms. Foundas has not yet commenced to serve her term. Whether the Parole Commission guidelines, as applied to her, will help or hurt her is mere speculation. For aught we now know, she may be released soon after imprisonment; or, before she is eligible for parole, the guidelines may be changed. We, therefore, leave debate to those not inhibited by the constitutional restriction that limits our jurisdiction to the decision of cases and controversies. U.S.Const. art. III.

■ The other arguments are not speculative; they simply lack merit. A special parole term may validly be imposed on a conspiracy count. *United States v. Houde*, 5 Cir. 1979, 596 F.2d 696, 704, *cert. denied* —— U.S. ——, 100 S.Ct. 452, 62 L.Ed.2d 377; *United States v. Dankert*, 5 Cir. 1975, 507 F.2d 190. *Accord United States v. Wiley*, 2 Cir. 1975, 519 F.2d 1348, *cert. denied sub nom. James v. United States*, 1976, 423 U.S. 1058, 96 S.Ct. 793, 46 L.Ed.2d 648; *United States v. Rich*, 8 Cir. 1975, 518 F.2d 980, *cert. denied*, 1976, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200; *United States v. Jacobson*, 10 Cir. 1978, 578 F.2d 863, *cert. denied*, 439 U.S. 932, 99 S.Ct. 324, 58 L.Ed.2d 327. *But see United States v. Mearns*, 3 Cir. 1979, 599 F.2d 1296.

■ Nothing in *United States v. Hernandez*, 5 Cir. 1979 (en banc), 591 F.2d 1019, prevents imposition of separate sentences for the three offenses charged here. Ms. Foundas' conspiracy conviction is based on a separate statutory section from the other convictions. As noted in *Hernandez*, that opinion did not deal with the violation of separate statutes. The conspiracy statute, as a part of network of the narcotics law, serves a separate and important role distinguishing it from the possession and distribution statutes. Simply put: it condemns conspiracies. *See United States v. Hernandez*, 5 Cir. 1979 (en banc), 591 F.2d 1019,

1022 & n.9. Neither does *Hernandez* dictate a single sentence for the possession and distribution charges. In *Hernandez* the convictions were both based on the same act: Hernandez's friend sold heroin to DEA agents. Hernandez was convicted separately for possession with intent to distribute *and* distribution (even though the only evidence of possession was his constructive possession at the time of distribution). In this case, Ms. Foundas admitted telling the DEA officer that she had cocaine; she disappeared at one point to get it; and she produced cocaine from her purse at the appropriate moment. The possession in this case was separate from the actual act of distribution. *See Ianelli v. United States*, 1975, 420 U.S. 770, 785 n.17, 95 S.Ct. 1284, 1293 n.17, 43 L.Ed.2d 616; *United States v. Costello*, 5 Cir. 1973, 483 F.2d 1366.

█ The contention that Rule 11(c) applies to a case submitted on stipulated facts when by terms and obvious intent it relates only to guilty pleas is surely frivolous, and goes beyond the diligence expected of counsel.

█ The Miami jury wheel is made up from magnetic tapes of Miami and Dade County voter's lists, stored in a computer. In another motion, the defendant asked the court for "temporary custody" of the original copy of the magnetic Miami and Dade County voter registration lists and the Miami Division master jury wheel. The court refused the request on the basis that a print-out could be obtained from the GSA Data Processing Center. Counsel for Ms. Foundas contends that he attempted to do so, and couldn't. At any rate, instead of seeking a print-out, or access to the data, he continued to assert a right to custody of the tapes. The district judge did not abuse his discretion in denying the defendant's counsel physical custody of original tapes that might be destroyed, altered or damaged even without any deliberate purpose to do so.

There being no merit to the grounds asserted for reversal, the conviction is AFFIRMED.