James G. DAVIS, Petitioner-Appellant,

v.

STATE OF ALABAMA,
Respondent-Appellee.

No. 78–1165.

United States Court of Appeals,
Fifth Circuit.

June 13, 1979.

Rehearing and Rehearing En Banc
Denied Aug. 6, 1979.

B. Don Hale (court-appointed), Cullman, Ala., for petitioner-appellant.

William J. Baxley, Atty. Gen., Carol Jean Smith, Asst. Atty. Gen., Montgomery, Ala., for respondent-appellee.

Before GOLDBERG, Circuit Judge, SKELTON,* Senior Judge, and FAY, Circuit Judge.

GOLDBERG, Circuit Judge:

No one denies that James Davis, the appellant in this case, killed his wife. He pleaded not guilty by reason of insanity—his only possible defense—but a jury in Cullman County, Alabama, convicted him of first degree murder. After unsuccessfully pursuing his state remedies he petitioned for federal habeas corpus. He alleged that there were a number of constitutional errors in his trial. The United States District Court for the Northern District of Alabama dismissed his petition. When Davis appealed, we upheld the district court on several grounds but remanded for an evidentiary hearing to determine if Davis had received the effective assistance of counsel. *Davis v. Alabama*, 545 F.2d 460, 467 (5th Cir.), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). On remand a hearing was held before a magistrate, who recommended that Davis be given a new trial. The district judge disagreed and ruled against Davis. Davis appeals again. We reverse because we believe that Davis's trial attorneys failed to discharge their duty to their client. We remand for a further hearing on the question of whether their failure prejudiced Davis.

Approximately two months before his trial, two attorneys were appointed to represent Davis. On the day of the trial, they moved for a continuance. They said they needed time to develop an insanity defense. They cited their "heavy caseload" and the duties one of the attorneys had in the legislature. R. Vol. 1 at 73. Since Davis lived in California and was only visiting in Alabama at the time of the crime, *see* R. Vol. 2 at 27, 62–63, they wanted more time "mainly for the purpose of getting information from the State of California on this question of insanity." R. Vol. 1 at 74. To support their motion for continuance, they adduced only one piece of evidence—the report of a psychologist named Dr. Dean who had recently treated Davis in California. They acknowledged, however, that they had known of Dr. Dean's treatments for several weeks, R. Vol. 1 at 68–69, 70–71,[1] and in addition the report principally discussed Davis's alcoholism. The trial judge denied the motion for a continuance and the case immediately proceeded to trial.

At trial Davis's attorneys put on only the shell of an insanity defense. In Alabama, a variety of evidence can be used to prove insanity; the testimony of lay witnesses

---

\* Senior Judge of the United States Court of Claims, sitting by designation.

1. In any event, the trial judge apparently refused to consider this report because it was not properly authenticated. R. Vol. 1 at 74.

and general medical practitioners, as well as that of experts, is admissible. *See e. g., Hamilton v. State*, 281 Ala. 448, 203 So.2d 684, 686–87 (1967); *Smith v. State*, 263 Ala. 1, 82 So.2d 296 (1955). And while the record is unclear, it suggests that a considerable amount of evidence might have been used in support of Davis's insanity plea.[2] But Davis's trial attorneys called exactly one witness—the *sheriff* who arrested him. He testified that Davis often seemed "quite —fairly strange." The defense attorneys called no other lay witnesses. They called no medical witnesses, even though general practitioners, at least, were readily available in the area. *See* R. Vol. 1 at 83–84, 326.[3] All of this is undisputed, and it requires us to suspect at once that Davis has not received anything approaching the effective assistance of competent counsel. *See Hintz v. Beto*, 379 F.2d 937 (5th Cir. 1967). *See also Greer v. Beto*, 379 F.2d 923, 925 (5th Cir. 1967); *McCollum v. Bush*, 344 F.2d 672 (5th Cir. 1965).

 Indeed, even Davis's trial lawyers agreed that their representation of Davis was ineffective. They blamed the trial judge's refusal to grant a continuance for their deficient performance. But when we examine the denial of a continuance we must focus on "the reasons presented to the trial judge at the time the request is denied," *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 850, 11 L.Ed.2d 921 (1964); *see United States v. Uptain*, 531 F.2d 1281, 1285–86 (5th Cir. 1976); *McKinney v. Wainwright*, 488 F.2d 28, 29–30 (5th Cir.), *cert. denied*, 416 U.S. 973, 94 S.Ct. 1998, 40 L.Ed.2d 562 (1974), and recognize that the question is traditionally within the discretion of the trial judge, *see Ungar v. Sarafite*, 84 S.Ct. at 850; *Avery v. Alabama*, 308 U.S. 444, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). Davis's defense attorneys' motion for a continuance was so unsupported by explanation or evidence that the trial judge cannot be faulted for denying it. When they made the motion and again at the evidentiary hearing on Davis's federal habeas petition, the defense attorneys acknowledged that they had known of Davis's mental problems from the start. *See* p. 1218 & n. 8 *infra*. Nevertheless, they gave the trial judge virtually no explanation for their failure to "get [ ] information from . . . California" sooner.[4] They asked the trial judge to appoint a doctor and to allow him time to examine Davis, but they did not explain why they had failed to make that request, or to find a doctor themselves,[5] during the several weeks they were

2. See p. 1221 & n. 14 *infra*.

3. Apparently they tried to develop the defense by cross-examining some prosecution witnesses. All of these witnesses were local residents; since Davis lived in California and had grown up there, none of these witnesses, as the magistrate noted, would have known about any background of mental illness that Davis had. *See* R. Vol. 1 at 323 n. 5.

4. The defense attorneys urged that one piece of evidence appeared just before the trial and that this evidence caused them to take the insanity defense seriously for the first time. The one piece of evidence—Davis's trial attorneys had some difficulty describing it at the habeas hearing—was apparently that Davis might not have been discharged from Dr. Dean's court-ordered care. R. Vol. 2 at 63–64, 64–65. Significantly, this evidence was barely mentioned when the attorneys moved for a continuance; it made its major debut in the habeas hearing, when the attorneys were pressed to explain their delay. *Compare* R. Vol. 1 at 70–71, 73–74, *with* R. Vol. 2 at 46, 48–52. In addition, the trial judge might well have wondered why this evidence

was so crucial; if Dr. Dean's treatment itself did not alert defense counsel to Davis's possible insanity, it is difficult to understand why Davis's continuing under that treatment was so significant. In any event, if Davis's attorneys did attach so much importance to their belief that Davis had been discharged from Dr. Dean's care, *Greer v. Beto*, 379 F.2d 923 (5th Cir. 1967)—in which we said that a trial attorney was prima facie incompetent because he failed to present evidence of the defendant's insanity two months after a *jury* found the defendant sane—may suggest that Davis's attorneys' representation was inadequate.

5. Apparently neither Davis's trial counsel nor the attorney appointed to handle his habeas petition has ever argued that Davis's poverty was what prevented him from receiving a psychiatric or even medical examination. *See Davis v. Alabama*, 545 F.2d 460, 466 n. 22 (5th Cir.), *cert. denied*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977). Such an argument would raise an important constitutional question. *See, e. g., McCollum v. Bush*, 344 F.2d 672 (5th Cir. 1965), *aff'g Bush v. McCollum*,

involved with the case. *See* R. Vol. 1 at 68, 83, 70.

■ Instead of blaming the judge we hold that Davis's trial attorneys were responsible for the inadequacy of Davis's defense.[6] We have often said that a defense attorney must be prepared to investigate and develop evidence on behalf of his client. "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and explore all avenues leading to facts relevant to guilt and to a degree of guilt or penalty." American Bar Association Project on Standards for Criminal Justice, Standards Relating to the Prosecution Function and the Defense Function § 4.1 (tent. draft 1970). An attorney does not provide effective assistance if he fails to investigate sources of evidence which may

be helpful to the defense. *See, e. g., Rummel v. Estelle,* 590 F.2d 103, 104–05 (5th Cir. 1979); *Gaines v. Hopper,* 575 F.2d 1147 (5th Cir. 1978); *Bell v. Georgia,* 554 F.2d 1360, 1361 (5th Cir. 1977); *Gomez v. Beto,* 462 F.2d 596 (5th Cir. 1972); *Chalk v. Beto,* 429 F.2d 225, 227 (5th Cir. 1970); *King v. Beto,* 429 F.2d 221, 224 (5th Cir. 1970), *cert. denied,* 401 U.S. 936, 91 S.Ct. 921, 28 L.Ed.2d 216 (1971); *Caraway v. Beto,* 421 F.2d 636, 637–38 (5th Cir. 1970).

Davis's attorneys made practically no efforts to develop such information. This is undisputed. Davis had relatives in California who might have known, firsthand or secondhand, about his background of mental problems; but as the magistrate found, "[i]t is apparent that . . . defense counsel made no effort prior to the time of

231 F.Supp. 560 (N.D.Tex.1964). Indeed, we have recently suggested that a court must appoint a psychiatrist to aid the defense of an indigent whose sanity at the time of the crime is "seriously in issue." *See Pedrero v. Wainwright,* 590 F.2d 1383, 1390–91 n. 8 (5th Cir. 1979). But it seems clear from this record that Davis was not examined by a doctor because his attorneys made no effort to have him examined until the day the trial began, *see, e. g.,* R. Vol. 1 at 83, and because they made no efforts, other than proffering Dr. Dean's report, to put Davis's sanity "seriously in issue."

6. The state suggests that our earlier opinion, *Davis v. Alabama,* 545 F.2d 467 (5th Cir.), *cert. denied* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977), forecloses inquiring into the competence of trial counsel. In the last paragraph of that opinion, however, we said that "petitioner raises a substantial claim of ineffective assistance by counsel," and mentioned, among other things, that the "defense attorney produced no medical or psychiatric testimony." *Id.* at 467 & n. 23. We also cited *Mitchell v. Henderson,* 432 F.2d 435 (5th Cir. 1970), and *Hollingshead v. Wainwright,* 423 F.2d 1059 (5th Cir. 1970), both of which involved attacks on the competence of counsel; and we cited *Barker v. Wainwright,* 459 F.2d 8 (5th Cir. 1972), which we described as holding that "where petitioner alleges that defense counsel refused to investigate his case and devoted little time to its preparation, allegations of ineffective assistance of counsel that require an evidentiary hearing are raised." 545 F.2d at 467.

This confusion about the scope of our remand order may result from the actions of the attorney who represented Davis at the habeas hearing. This attorney—who did not represent Davis at trial—virtually stipulated that the trial

attorneys were competent. In fact, he apparently could not reiterate often enough that he was not challenging the actions of trial counsel. *See* R. Vol. 2 at 4; *id.* at 6; *id.* at 8; *id.* at 9–10; *id.* at 28; *id.* at 43; *id.* at 48–89; *id.* at 67. When Davis, in his testimony at the habeas hearing, suggested that his trial attorneys' conduct of the case may have been deficient, his own habeas counsel reacted by attempting to defend trial counsel and attack Davis. *See* R. Vol. 2 at 24–25. At oral argument, the habeas attorney offered this explanation for his actions:

Q. (by Judge Goldberg): Was there any stipulation that Davis's trial counsel was competent?
A. Judge, I think that trial counsel was competent.

. . . . .

A. Judge, I would have to say that I know both these people [Davis's trial attorneys]. I practice at the same bar, and they are competent.
Q. You mean they're generally competent.
A. Yes, sir, generally competent, yes, sir.

. . . . .

A. Judge, I practice down the hall from [one of the defense attorneys]. I am reluctant to say he's incompetent.

Friendship and neighborliness among attorneys are virtues to be admired, but they must not be allowed to transcend a lawyer's duty to his client. Nor can they be allowed to prevent us from doing our constitutional duty to defendants like Davis. For the reasons we elaborate, it seems plain to us that Davis's trial attorneys did not discharge the duty they owed to their client.

trial to secure the testimony of lay persons in California who had had an opportunity to observe irrational acts [by] Davis." R. Vol. 1 at 326. The attorneys might have telephoned California. They might have written to one of Davis's relatives there.[7] There is no evidence that they did anything of the sort. Similarly, we would have thought it axiomatic that defense attorneys considering an insanity defense should have their client examined by a psychiatrist or psychologist. In Alabama, as we have said, see pp. 1215–1216 supra, even a general practitioner can testify to the defendant's insanity. As the magistrate found: "Any local physician could have been called to testify as to his sanity. Yet the record strongly implies that no effort was made prior to trial to have Davis examined by a physician or to establish facts on which a physician could have based an opinion of Davis' sanity." R. Vol. 1 at 326.

Moreover, it was utterly clear from the start that an effective defense required some investigation. Davis's attorneys knew almost from the time they first met Davis that he was mentally unstable and had a history of mental problems. The district court suggested, see R. Vol. 1 at 337–38, that except for Dr. Dean's report the defense attorneys had no evidence indicating that Davis was insane; this suggestion is contradicted by the defense attorneys themselves. At the habeas hearing one of them acknowledged that Dr. Dean's report was "the main thing" but testified:

> Q. [D]id you have . . . anything other than this one encounter with Dr. Dean in California?

A. "Yes. We had all kinds of information about him, about problems he had had when he was a kid on up. As a matter of fact, we wanted to go to other cases where he had convictions and where he had been in court before because of problems he had had from it while he was a small kid. As I recall, one where he and his brother took money from the offering plate at a church, for example . . . . . ."

R. Vol. 2 at 55–56. This defense attorney—appointed two months before the trial—also testified:

> We had known for a month or two that there was some insanity in his background or some problems where he had to see a psychiatrist.

R. Vol. 2 at 46. When they argued for a continuance the defense attorneys cited the facts of the crime itself as evidence of Davis's insanity. R. Vol. 1 at 74. They repeatedly said that their own encounters with Davis convinced them that he had mental problems.[8]

Not only did the defense attorneys know that insanity was a possible defense; they apparently knew that it was Davis's only possible defense. Thus their failure to investigate cannot be excused by saying that it did not seem to be a very strong defense. In deciding not to develop the insanity defense Davis's attorneys effectively decided to put on no defense at all. We cannot say that such an approach amounts to adequate representation. See Bell v. Georgia, 554 F.2d 1360, 1361 (5th Cir. 1977); Gomez v. Beto, 462 F.2d 596, 597 (5th Cir. 1972).

In addition, Davis's attorneys knew that he lived in California and had grown up

---

7. At the federal habeas corpus hearing, Davis testified:

> From California, and I asked if they wanted my mother as a witness or my sisters or brothers, and they wouldn't tell me yes or no until the last day of the trial. I could have got testimony from my brothers and sisters, my mother and father.

R. Vol. 2 at 24.

8. For example, Davis's trial attorney testified: "I had known that he had had some mental problems. He had told me, as I recall, that he had."

R. Vol. 2 at 57, and:

> "Your Honor, as I stated before, there was something about him that just didn't appear to be right all the way through, and that is the reason, Your Honor, that I asked him if there had been any background of mental problems, because he just didn't appear to be able to talk like a competent person would. And that is when I asked him, and what I asked him, if he had problems, and he said yes, he did."

R. Vol. 2 at 59.

there, so that evidence of his background would likely be found there; they also knew, of course, of the role of medical testimony in an insanity defense, *see* R. Vol. 1 at 83. And they knew—or thought they knew [9]—that Davis himself would not be able to assist them very much in preparing the defense. Davis's trial counsel, discussing his request for a continuance, testified at the habeas hearing: ". . . I was of the opinion that we could gain some additional information if we were allowed to go out there and take depositions. Because just to tell you the truth, Mr. Davis didn't seem competent to me to tell us a lot about himself and his case." R. Vol. 2 at 47. He also testified:

THE COURT: Did [Davis] appear to be able to remember events in his life and to relate those events to you?

A. Your Honor, this is one of the problems that he appeared to have. He just didn't seem to be able to recall a lot of things that had happened in the past.

R. Vol. 2 at 60, and:

THE COURT: Other than his experience with . . . Dr. Dean . . . did he tell you of any other incident in his past?

A. He couldn't remember a lot about them. He had been in and out of trouble so much, he couldn't really remember. I think the major scrapes he had had with the law, he remembered back . . . . But he didn't recall all the facts about that.

R. Vol. 2 at 60.

In summary, Davis's attorneys knew that Davis had a history of mental problems, knew that insanity was his only possible defense, knew, or thought, that Davis himself would be little help in developing the defense, knew what possible outside sources might be developed, and—to judge from what they said when they argued for a continuance—knew that without some investigation they had practically no defense to offer. Still they made no effort to investigate or develop the possible sources of evidence. This is not a borderline case; it is a clear breach of the duty a defense attorney owes to his client.

■ Accordingly, the state's effort to exonerate Davis's attorneys by saying that Davis might have given them more leads, more evidence of his insanity, is mostly irrelevant. Davis's attorneys had a clear duty to investigate and did not fulfill it. That failure is not somehow offset just because Davis himself might have made the defense less of a sham by volunteering information. But the state's suggestion raises larger and more interesting issues. The state and the district court seemed to believe that by not informing his attorneys of all the evidence of insanity he knew, Davis somehow failed in his duty to his attorneys.[10] But eliciting relevant information from the client is a central part of the defense attorney's task. Long ago, for example, the Fourth Circuit held ineffective a defense attorney whose failure to explain a possible defense to his client resulted in the client's not disclosing information which would have established the defense. *See Coles v. Peyton,* 389 F.2d 224, 226–27 (4th Cir.), *cert. denied* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968). In other words, a defendant's failure to disclose certain information to his attorney is not necessarily, or obviously, or even probably the defendant's fault. We must examine the facts of each case. Even defenses which seem straightforward to lawyers may be misunderstood by defendants or may be beyond their com-

---

**9.** The matter is not free from doubt; there are some signs that Davis's trial attorneys were as cavalier in eliciting the evidence Davis had as they were in developing other sources. Frequently, for example, Davis's attorneys first learned facts about Davis from the sheriff's office. *See, e. g.,* R. Vol. 1 at 55, 71; R. Vol. 2 at 57. Presumably the sheriff's office learned those facts either from Davis or from pursuing

leads that Davis supplied. When communications between a criminal defendant and the sheriff are better than those between the defendant and his attorney, we are entitled to be skeptical about the vigor with which the attorney is seeking evidence.

**10.** *See* R. Vol. 1 at 337–38.

prehension.[11] Legal insanity, Davis's defense, is an unusually difficult and technical notion, and a defendant cannot be expected to know what facts are relevant to it. For example, Davis told his attorneys about Dr. Dean, who had treated him until he left for his visit to Alabama, but Davis may not have realized that earlier events and treatments were also relevant. We should not hold a defendant responsible for failing to reveal certain information to his attorney unless the attorney has made every reasonable effort to elicit the information, has made his client aware of the sort of information that might be relevant, and has given his client an opportunity to disclose it. We do not know that Davis's attorneys did any of those things.[12]

When a defendant has mental problems, as Davis evidently did, it is even more unrealistic to penalize him for failing to disclose every relevant piece of information to his attorneys. As we have said, see p. 1218 & n. 8 *supra,* Davis's apparent mental condition caused his attorneys not to take him seriously as a source of evidence; under those circumstances, it is difficult for us to blame Davis for the information that did not come to light. An attorney who does seriously interview an arguably insane client may find him to be one of those many insane persons who placidly insist that they are entirely sane; and the attorney is likely to find that an arguably insane client is not the best or most reliable source of information. The state suggests that because Davis was found competent to stand trial, he is to be blamed for not disclosing evidence to his attorneys. But not only must we take account of the fact that Davis's attorneys apparently did not interview him very intensively; more generally, a finding that a defendant is competent does not entitle his counsel to act as if the defendant were intelligent, articulate, and learned in the law. An attorney must take account of his client's particular incapacities and weaknesses, and a reviewing court must examine the specific dealings between them.[13]

For these reasons we have no difficulty holding that Davis's attorneys, by failing to develop and investigate possible sources of evidence, did not discharge their duty to their client. In saying this we do not suggest that Davis's attorneys were generally inept; perhaps they thought that when they told the trial judge of their work load they would be given more time. Perhaps

11. A defendant may not even know that insanity—or, for example, self-defense—is a possible defense. He may think that asserting self-defense only provides a motive for a crime; similarly, we may be reluctant to disclose evidence of his insanity for fear that it will become generally known and will incriminate him or increase his sentence.

12. When Davis was asked whether he had informed his lawyers of one piece of evidence (the Army psychiatrist's report, *see* footnote 14 *infra*), he said:

"No, they didn't give me a chance to, and like I said, I only seen them twice. And I didn't know what kind of evidence they needed or anything else. And they didn't come up and talk to me or nothing."

R. Vol. 2 at 20. Davis's attorney did testify that he "interviewed [Davis] a number of times and talked with him," R. Vol. 2 at 58, but this testimony was not intended to contradict what Davis said. *See also* R. Vol. 2 at 15. Davis's attorney did not describe his discussions with Davis; he did not even say whether he had asked Davis questions that were likely to elicit the information that the state accuses Davis of withholding.

13. In any event, the state's argument begs the question to a significant degree. Davis's attorneys had practically no evidence to present in support of their motion to have Davis declared incompetent. For example, the attorneys themselves did not testify to their difficulties in dealing with Davis; we have indicated that such testimony is important in establishing incompetence to stand trial. *See Pedrero v. Wainwright,* 590 F.2d 1383, 1388 & n. 3. (5th Cir., 1979). Our ruling in the earlier appeal of this case, *Davis v. Alabama,* 545 F.2d 460 (5th Cir.), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977), was based on only the evidence available to the trial judge and the report of the psychologist who interviewed Davis in prison; that report, we said, "never addresses the issue of petitioner's present or past competency." *Id.* at 465. Moreover, we did not find the defendant competent; we held that he had not "positively, unequivocally, and clearly generate[d] a *real, substantial, and legitimate doubt*" of his competency by "*clear and convincing*" evidence. *Id.* (quoting, and adding emphasis to, *Bruce v. Estelle,* 483 F.2d 1031, 1043 (5th Cir. 1973).).

that is the reason they did not try to develop the insanity defense before trial. Perhaps they would have succeeded with another trial judge, but this judge, trying his first case, *see* R. Vol. 1 at 15, insisted on more evidence of insanity and denied the continuance. Perhaps it was all simply a miscalculation. But the defense of this indigent, possibly insane accused did not call for a calculation balancing his rights against the attorneys' convenience. It did not call for brinkmanship with the defendant's only possible defense. It called for thoughtful, thorough preparation and investigation. Instead it received virtually none.

■■ Nevertheless we cannot yet order that Davis be given a new trial, because we do not know that his attorneys would have uncovered evidence helpful to his defense even if they had acted properly. The record does suggest, fairly strongly, that some such evidence exists. For example, (1) a clinical psychologist who has examined Davis since his trial reported his "strong latent aggressive feeling" toward women, his "paranoid thinking," and his "schizo-affective disorder," R. Vol. at 36; (2) Davis was discharged from the Army for failing to adjust to military life, *see* R. Vol. 2 at 21, 70, which may suggest psychological problems; (3) after Davis's conviction, and apparently at the request of the attorney who handled his habeas corpus petition, Davis's mother wrote a letter describing some of his irrational behavior. R. Vol. 2 at 11–12; R. Vol. 1 at 325.[14] But this evidence has not been critically examined or connected to Davis's condition at the time of the crime.[15] Therefore we remand to the district court for another hearing devoted solely to the question of whether Davis's attorneys' misfeasance prejudiced him. At this hearing

Davis will bear the burden of proof,[16] but he need only show that his attorneys' errors were not "harmless beyond a reasonable doubt," *see Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). If he makes such a showing, he will be entitled to a new trial on the ground that he has not received the "reasonably effective assistance" of counsel. *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir. 1960), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961).

■ We are dealing with a crucially important right, so our holding on this point is narrow. Not every defendant whose attorney was deficient must show prejudice. The Supreme Court has said that "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice resulting from its denial," *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942), and has held that the denial of counsel at a critical stage of a criminal proceeding is always considered prejudicial. *See, e. g., Chapman v. California,* 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *White v. Maryland,* 373 U.S. 59, 60, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). "That, indeed, was the whole point of *Gideon v. Wainwright,* 372 U.S. 335, [83 S.Ct. 792, 9 L.Ed.2d 799] [1963]." *Chapman v. California,* 386 U.S. at 43, 87 S.Ct. at 837 (Stewart, J., concurring). But "the purpose of *Gideon* was not merely to supply criminal defendants with warm bodies, but rather to guarantee reasonably competent representation," *Cooper v. Fitzharris,* 551 F.2d 1162, 1164 (9th Cir. 1977), so if a defense attorney were to put on what amounted to no de-

---

14. In addition, Davis may have consulted a psychologist or psychiatrist in the Army, R. Vol. 2 at 20–21, and he may have seen an additional psychiatrist, besides Dr. Dean, in civilian life, R. Vol. 2 at 15, 18.

15. For example, Davis might show that the disorders identified by the psychologist who examined him after conviction probably also existed at the time of the crime; or he might show that he was indeed discharged from the Army for psychological reasons. Either of

these showings would prove that Davis had been prejudiced by his attorneys' conduct.

16. A habeas petitioner can discharge his burden of proof either by showing prejudice or by showing that the evidence he needs to prove prejudice has been lost. *See, e. g., McQueen v. Swenson,* 498 F.2d 207, 220 (8th Cir. 1974); *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115 (3rd Cir. 1970).

fense at all, we would "not stop to determine whether prejudice resulted," *Hamilton v. Alabama,* 368 U.S. 52, 55, 82 S.Ct. 157, 159, 7 L.Ed.2d 114 (1961).

The Supreme Court has gone further than this, however; indeed the Court seems never to have applied the harmless error doctrine to a case involving the ineffective assistance of counsel. *But see Brooks v. Tennessee,* 406 U.S. 605, 92 S.Ct. 1891, 1895, 32 L.Ed.2d 358 (1972). In three recent cases involving ineffective representation the Court pointedly found constitutional violations without inquiring into prejudice. In *Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), *rev'g. United States v. Fink,* 502 F.2d 1 (5th Cir. 1974), the trial court prohibited a defendant from consulting his attorney during an overnight recess that separated the defendant's direct testimony from cross-examination. Because the defendant had shown no prejudice, we held that he had not been denied the effective assistance of counsel, *see* 502 F.2d at 9; the Supreme Court, requiring no showing of prejudice, reversed. In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975), the Supreme Court held that refusing to allow defense counsel to make a closing argument at trial violated the defendant's right to the effective assistance of counsel, even if the issues were simple and the prosecution's case very strong. *See id.* 95 S.Ct. at 2556, 2553. Finally, in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), the Court held that whenever a trial court improperly permits or requires the same attorney to represent two defendants at a joint trial, "reversal is automatic" even if neither defendant can show specifically that he was prejudiced. *Id.* 98 S.Ct. at 1180–82.

Some circuits have gone further still and have held that a defendant never needs to show prejudice in order to establish that he has been denied the effective assistance of counsel. *See Cooper v. Fitzharris,* 551 F.2d 1162, 1164–65 (9th Cir. 1977); *Beasley v. United States,* 491 F.2d 687, 696–97 (6th Cir. 1974); *but see United States v. Sumlin,* 567 F.2d 684, 688 (6th Cir. 1977), *cert. de-nied,* 434 U.S. 932 (1978). Other circuits disagree and explicitly require a prejudice to be shown in some cases. *See United States v. Cooper,* 580 F.2d 259, 263 n. 8 (7th Cir. 1978); *McQueen v. Swenson,* 498 F.2d 207, 218–20 (8th Cir. 1973); *United States ex rel. Green v. Rundle,* 434 F.2d 1112, 1115–16 (3rd Cir. 1970); *United States v. DeCoster,* 159 U.S.App.D.C. 326, 333, 487 F.2d 1197, 1204 (1973) (placing burden on government to show lack of prejudice); *Coles v. Peyton,* 389 F.2d 224, 226 (4th Cir.), *cert. denied* 393 U.S. 849, 89 S.Ct. 80, 21 L.Ed.2d 120 (1968) (same). *See also United States v. Bosch,* 584 F.2d 1113, 1123 (1st Cir. 1978) (leaving question open).

We have sometimes intimated that a defense attorney's shortcomings vitiate a conviction only if they prejudice the defendant. *See Friedman v. United States,* 588 F.2d 1010, 1016, 1017 (5th Cir. 1979); *Thomas v. Estelle,* 588 F.2d 170, 171 (5th Cir. 1979); *Buckelew v. United States,* 575 F.2d 515, 521 (5th Cir. 1978); *Pennington v. Beto,* 437 F.2d 1281, 1285 (5th Cir. 1971). *See also Sand v. Estelle,* 551 F.2d 49 (5th Cir. 1977), *cert. denied,* 434 U.S. 1076, 98 S.Ct. 1267, 55 L.Ed.2d 783 (1978); *Cheely v. United States,* 535 F.2d 934, 936 (5th Cir. 1976). All of these cases involved an attorney's failure to conduct an adequate investigation of possible defenses, and we believe this is decisive. Not every variety of attorney ineffectiveness should be treated in the same way. If an attorney has not adequately investigated possible defenses, it will often, although not always, be appropriate to ask whether a defendant was prejudiced before ordering a new trial.

We reach this conclusion for several reasons. First, a court deciding whether a failure to investigate was prejudicial ordinarily will perform a task to which it is suited. Usually it need only examine the specific evidence that an investigation would have uncovered; it will determine how prospective witnesses will testify and whether certain tangible evidence exists. Affidavits, depositions, or if necessary live testimony will generally be reliable and economical means of deciding the question.

By contrast, a court will face a far less congenial prospect if it attempts to decide whether prejudice has resulted from, for example, the kind of ineffectiveness involved in *Holloway*, where an attorney was forced to represent defendants with conflicting interests. Such a court would have to examine the various strategies that the attorney might have pursued and the choices the defendants might have made had they all not been hamstrung by the attorney's conflict; as the Supreme Court noted, this task will often be difficult or "virtually impossible" and would require "unguided speculation," *see Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 1181–82 (1978). Similarly, a court would not be well equipped to inquire into the prejudice caused by an attorney's failure to consult sufficiently with his client—a failure which was mandated by the trial judge in *Geders* but might also result from the attorney's dereliction. A court could intelligently evaluate prejudice in such a case only by becoming closely familiar with both the course of the trial and the relationship between the attorney and the client; then the court would have to put itself in the place of an attorney who was better informed by a client who was better advised, and decide what different decisions that attorney would have made. This will often be a hopelessly intricate task, especially compared to the accumulation of relatively concrete evidence which will be the sole function of the district court on remand here. For this reason, our holding does not conflict with *Holloway* or *Geders* ; nor does it require that prejudice be shown before an attorney is held ineffective for representing clients with differing interests or for failing to consult adequately with his client.

Relatedly, a court examining the prejudice caused by an attorney's failure to investigate can, for the most part, avoid speculating about how a jury would have reacted to certain evidence or certain events at trial. *See Sand v. Estelle*, 551 F.2d 49, 51 (5th Cir. 1977), *cert. denied,* 434 U.S. 1076, 98 S.Ct. 1267 (1978). To be sure, the court will have to decide whether it is satisfied, beyond a reasonable doubt, that the jury's verdict would not have been altered by the evidence presented to it. But this is a threshold inquiry into whether evidence is sufficient to create a question for the jury; it is the sort of inquiry that courts must often make. *See generally Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Indeed it is not unlike the question a federal trial judge answers when he decides whether the defendant has adduced enough evidence of insanity to warrant submitting the issue to the jury. *See Davis v. United States*, 160 U.S. 469, 476, 16 S.Ct. 353, 40 L.Ed. 499 (1895). By contrast, inquiring into the prejudice resulting from other alleged forms of attorney ineffectiveness will often demand a much more thoroughgoing replication of the jury's function. Thus in *Herring v. New York* the Supreme Court recognized how difficult it is to imagine not just the summation an attorney would have given, had he been allowed, but the reaction that the finder of fact would have had. *See* 422 U.S. 853, 95 S.Ct. 2550, 2555–56 & n. 15 (1975). The same may sometimes be true of a variety of trial decisions—for example, a decision not to prepare or call a certain witness, not to cross-examine a witness, or not to object to certain evidence, *see e. g., Cooper v. Fitzharris*, 551 F.2d 1162 (9th Cir. 1977)—that reflect deficient performance by an attorney. So those cases, too, like *Herring*, are comfortably distinguishable from the situation we address here. Of course, the facts of each case must be examined; in each case we must assess the advisability of requiring a showing of prejudice. Sometimes, it may be inappropriate to insist that a defendant show prejudice when his attorney has failed to investigate his case adequately; sometimes it will be appropriate to require a defendant to show how he was injured by some other variety of attorney dereliction.

Because we hold that Davis's trial attorneys did not discharge their duty to their client, we reverse the judgment of the district court. The case is remanded for a hearing on the single question of whether the attorneys' conduct prejudiced Davis. If it did, Davis is entitled to a new trial.

REVERSED and REMANDED.

SKELTON, Senior Judge, dissenting.

I respectfully dissent. I cannot agree with much of the reasoning of the majority nor with the result they reach in this case.

This is an appeal from an order of the United States District Court for the Northern District of Alabama, Northeastern Division, entered on December 15, 1977, denying the petition of James G. Davis for a writ of habeas corpus.

Davis, the petitioner herein, was convicted of first-degree murder in the Circuit Court of Cullman County, Alabama, on November 28, 1973, for the murder of his wife. He was sentenced to imprisonment in the state penitentiary for life. After exhausting his state remedies,[1] Davis initiated the instant proceedings by filing this his third petition for a writ of habeas corpus.[2] Adopting the report of the United States Magistrate and holding no evidentiary hearing, the Honorable C. W. Allgood, United States District Judge, dismissed the petition. Upon appeal of that dismissal, this court affirmed in part and remanded in part, directing the district court to determine if the denial of petitioner's motion for continuance by the state trial court deprived petitioner of effective assistance of counsel. *Davis v. Alabama*, 545 F.2d 460 (5 Cir. 1977). The Supreme Court of the United States denied certiorari. *Davis v. Alabama*, 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

On the prior appeal of this case, this court stated that there were two issues before the court, namely, (1) whether the trial court erred in dismissing that part of petitioner's habeas petition that called into question his competency to stand trial, and (2) whether the trial court erred in denying the motion of petitioner's counsel for a continuance to better prepare themselves to defend him at the trial. (545 F.2d 463).

As to the first issue relating to petitioner's competency at the time of trial, this court found, concluded and held that he was competent when the trial was held. The court cited the factors listed by the Supreme Court in *Drope v. Missouri*, 420 U.S. 162, 180, 95 S.Ct. 896, 907, 43 L.Ed.2d 103, 118 (1975), that should be considered to determine competency if the issue is raised, saying:

"While the Supreme Court has not prescribed a general standard regarding the nature or quantum of evidence necessary to require resort to an adequate procedure, it has stated that three factors should be considered. These factors are: existence of a history of irrational behavior; defendant's demeanor at trial, and prior medical opinion. *Drope v. Missouri*, 420 U.S. at 180, 95 S.Ct. at 907, 43 L.Ed.2d at 118. Examining the present case in light of the considerations discussed above, we note that the defense never raised the issue of competency either prior to or during the trial." 545 F.2d 464.

Even though the petitioner did not raise the issue of his competency, the court, nevertheless, considered and disposed of the question, adversely to him, as shown by the following:

"Having determined that defendant did not raise the issue of competency, we look to the record to determine if, in light of the three factors listed in *Drope*, indicia suggesting a bona fide doubt as to defendant's competence existed at trial. First, we note that while domestic quarrels occasionally clouded defendant's past, *he had no history of irrational behavior* such as that uncovered in *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966) or in *Lee v. Alabama*, 386 F.2d 97 (5th Cir. 1967) (en banc). While the record indicates that defendant had seen

---

1. The Court of Criminal Appeals of Alabama affirmed Davis' conviction on October 1, 1974, *Davis v. State*, 53 Ala.App. 598, 302 So.2d 571 (1975). On November 8, 1974, the trial court denied a petition for writ of error, *coram nobis*; the Court of Criminal Appeals affirmed this judgment on February 18, 1975. Finally, on April 24, 1975, the Alabama Supreme Court denied Davis' petition for a writ of certiorari.

2. Davis' first petition was dismissed on December 20, 1974. His second petition was dismissed on June 11, 1975.

a psychologist, *the psychologist's report, indicating that defendant was getting along better with his wife and no longer needed treatment, negates any suggestion* of incompetency that one might infer from the *fact of his treatment.* In addition, *lay witnesses, who testified at trial that defendant did not act irrationally or seem incoherent shortly after the crime and during his pre-trial confinement in jail, rebutted any suggestion of 'bona fide doubt' about defendant's competence. Finally, defendant's demeanor at the pretrial hearing on the § 425*[16] *motion as*

[16] "Defendant did not testify at trial, although the record indicates no evidence that he acted incompetently at that proceeding." 545 F.2d 464, 465. (Emphasis supplied).

*reflected through his ability to recite, with great particularity and understanding, facts concerning his family and his criminal record, indicated no incompetence on his part.* See *McCune v. Estelle,* 534 F.2d 611, 612 (5th Cir. 1976) (no incompetence shown where defendant understood proceedings and able to coherently narrate what had happened in his life as a whole, as well as immediately before trial). Our examination of the trial record, therefore, convinces us that no *Pate* violation occurred through the trial court's failure to *sua sponte* conduct a competency hearing."

The court then stated that a defendant may still prevail if he can show at a post-conviction habeas hearing that he, nevertheless, was incompetent to stand trial. This question was disposed of by the holding of the court in this case that post-conviction evidence did not show that petitioner was incompetent at the time of trial, as follows:

" 'A determination that insufficient doubt [of competence] existed . . . at the time of trial does not preclude a post-conviction inquiry into competence to stand trial.' *Nathaniel v. Estelle,* 493 F.2d [794] at 798 [5th Cir.]. Although he cannot argue that the trial court's failure to invoke appropriate procedures violates his rights to due process, the defendant still may prevail, if at habeas, he can

show that he nevertheless was incompetent to stand trial. To determine this second question, the *Nathaniel* panel adopts the guideline articulated by Judge Gewin in *Bruce v. Estelle,* 483 F.2d 1031 (5th Cir. 1973):

'Courts in habeas corpus proceedings should not consider claims of mental incompetence to stand trial where the facts are not sufficient to positively, unequivocally, and clearly generate a *real, substantial, and legitimate doubt* as to the mental capacity of the petitioner to meaningfully participate and cooperate with counsel during a criminal trial. . . . [T]he standard which should be met to sustain such a claim [is] a history of mental illness, substantial evidence of mental incompetence at or near the time of trial supported by the opinions of qualified physicians and the testimony of laymen. The burden is on the petitioner to prove his allegations; such proof should be clear and convincing.'

"Id. at 1043 (emphasis added). Examining the state court record and pleadings before the district court on habeas, *petitioner's allegations do not meet this threshold requirement. The facts before the trial court that were potentially relevant to competency*[18] *clearly do not satis-*

[18] "Dr. Dean's report, defendant's demeanor at trial, testimony of lay witnesses."

*fy the Bruce standard.* Petitioner's only other factual allegation to the district court was the existence of a report by a clinical psychologist, Dr. Verna Wool, presumably made during the first months of petitioner's sentence on this conviction. Introduced as Petitioner's Exhibit E, the report merely records the essence of an interview with petitioner concerning his history of domestic problems. Dr. Wool never addresses the issue of petitioner's present or past competency or insanity and none of her comments, even if accepted as true, raise a 'real, substantial, and legitimate doubt' as to defendant's competency. Given petitioner's failure to present allegations that, even if accepted as correct, meet the *Bruce* requirement,

the district court did not err in dismissing without an evidentiary hearing,[21] petitioner's habeas petition, at least as that petition calls into question petitioner's competency.

[21] ". . . With respect to the *Pate* requirement that the trial court hold a competency hearing whenever defendant raises a bona fide doubt as to his competency to stand trial, our examination focuses on the facts known to the trial court at the time of trial. These facts are not in dispute; only the inferences to be drawn from those facts are contested. Those inferences being constitutionally guided by *Pate* and its progeny, no state evidentiary hearing was required. Likewise with regard to the substantive issue of competency, we have determined that the factual allegations contained in appellant's petition, even if accepted as true, do not meet any test that this circuit has established as a threshold requirement that a claim of incompetency must satisfy; neither the 'substantial allegations' language of *Lee*, 386 F.2d at 97, the 'bona fide' doubt test of *Pate* and progeny —e. g. *Grissom v. Wainwright*, 494 F.2d 30 (5th Cir. 1974); *Jordan v. Wainwright*, 457 F.2d 338 (5th Cir. 1972); or the 'real, substantial and legitimate doubt' standard of *Bruce*, 483 F.2d at 1043." 545 F.2d 465–466. (Emphasis supplied).

Finally, on the competency question, we held on the prior appeal that the trial court acted properly in denying the Section 425 motion of petitioner's counsel that he be given a mental examination.[3] In this connection, we held:

". . . in order to receive habeas corpus relief pursuant to 28 U.S.C. § 2254, the petitioner must establish that the state court violated a federal constitutional right. Yet, while appellant's counsel discusses at great length the constitutional requirement that a defendant be competent to assist in his defense, he cites us to no relevant authority that requires, as constitutionally mandated, any procedure to determine criminal responsibility similar to that provided for in § 425. Instead, he concentrates on the impropriety of the § 425 denial in terms of Alabama law. The Alabama Criminal Court of Appeals, however, determined that the trial court's denial of that motion accorded with relevant state law; we

**3.** Petitioner's counsel were appointed by the court and could hardly have been expected to have such a mental examination made at their

accept their determination." 545 F.2d 466.

Thus, it is clear that a previous panel of this court found and concluded that the petitioner was competent just before his trial, during his trial, and after his trial was held. This is binding on us. *United States v. Hernandez*, 580 F.2d 188 (5 Cir. 1978), affirmed and remanded for resentencing, 591 F.2d 1019 (5 Cir., en banc, 1979). I have dwelt at length on this competency question to dispel once and for all time any notion or speculation that the petitioner was not competent at the time of his trial.

This brings me to a discussion of the second issue that was before this court on the previous appeal, namely, whether the court erred in denying the motion of petitioner's counsel for a continuance to better enable them to prepare his defense. The district court did not hold an evidentiary hearing on this question. We held that the contention of the petitioner in this regard raised a substantial claim of ineffective assistance of counsel, but it was tied to the action of the trial judge in denying the motion for continuance as shown by the remand order. We did not decide this issue, but remanded the case to the district court by issuing the following order:

"Accordingly, we remand this part of the complaint to the district court to determine if denial of the continuance deprived petitioner of effective assistance of his counsel.

"Affirmed in part, reversed in part." 545 F.2d 467.

Much of the difficulty and confusion in the district court on remand, and now in this court in the present appeal, was and is due to the bifurcated wording of the above remand order. As can be seen from the order, it is divided into two queries, namely, (1) the correctness of the denial of the motion for continuance, and (2) the relation of the denial to effective assistance of counsel. The two queries are interrelated and it is difficult to dispose of one without at the

own expense after the trial judge refused to order it.

same time taking care of the other. No doubt, that is why the district court on remand considered and disposed of both questions when he made the following finding and conclusion after an evidentiary hearing;

"The record as a whole shows that the petitioner was not denied the effective assistance of his counsel either from the denial of the motion for continuance by the trial judge or from the representation he received from his attorneys at the trial."

As to the denial of the motion for continuance, the facts show that it was a general motion with no mention of the existence of any specific evidence which was known to exist, and which counsel might develop if given more time, nor the name of any material witness who might testify for the petitioner if time was allowed for counsel to locate him and procure his testimony. Neither did the motion allege what prejudice, if any, would likely result to the petitioner if the motion was denied.[4] A motion for a continuance is addressed to the sound discretion of the trial court and the exercise of that discretion will not be deemed improper without a clear showing that such discretion has been abused. *Avery v. Alabama,* 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1944); *United States v. Uptain,* 531 F.2d 1281 (5 Cir. 1976); *Jackson v. United States,* 330 F.2d 445 (5 Cir. 1964), *cert. denied* 379 U.S. 821, 85 S.Ct. 42, 13 L.Ed.2d 32 (1964); *United States v. Sahley,* 526 F.2d 913 (5 Cir. 1976). Furthermore, when such an abuse has been alleged, it must be decided on a case by case basis. As the Supreme Court held in *Ungar v. Sarafite,* 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964):

"There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *The answer must be found* in the circumstances present in every case, *particularly in the reasons presented to the trial judge* at the time the request is denied. *Nilva*

v. United States, 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415; *Torres v. United States,* 270 F.2d 252 (CA 9th Cir.); cf. *United States v. Arlen,* 252 F.2d 491 (CA 2d Cir.). (376 U.S. 589–90, 84 S.Ct. at 850)." (Emphasis supplied).

This court, in *United States v. Uptain, supra,* stated that a "particularly common claim is that a continuance was necessary to interview and subpoena potential witnesses," and listed the criteria the court has specifically considered with regard to such cases as follows:

" . . . [T]he diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony. A general rule recently has emerged:

'A movant must show that due diligence has been exercised to obtain the attendance of the witness, that substantial favorable testimony would be tendered by the witness, that the witness is available and willing to testify, and that the denial of a continuance would materially prejudice the defendant.'

*United States v. Miller,* 513 F.2d 791, 793 (5 Cir. 1975). *See also United States v. Cawley,* 481 F.2d 702, 705 (5 Cir. 1973)." 531 F.2d at 1287.

It is clear that petitioner's motion for continuance did not contain any of the necessary criteria required by the above cases. Under these circumstances, the trial judge did the only thing he could do when he overruled the motion. All of the members of the panel on this appeal agree that the trial judge is not to be faulted for denying the motion, and his action in that regard

---

4. At the evidentiary hearing, Judge Fred Folsom, Circuit Judge of the 32nd Judicial Circuit, State of Alabama, Cullman County, Alabama, who tried the case, testified as follows:

" . . . they made no showing as to what could be gained from a continuance, and their motion was general, in that they stated they wanted more time to prepare the defense."

was proper. Accordingly, since the denial of the motion was proper, it could not and did not, as a matter of law, deprive the petitioner of the effective assistance of counsel. That was the only question remanded to the district court. It has been answered by that court in the negative. The finding and conclusion of the district court, together with our view that the denial of the motion was proper, should end the matter. Obviously, trial counsel could have been effective before the motion was denied, or afterwards, or both. In my opinion, they were effective in both instances under the circumstances of this case, and the finding and conclusion of the district court, on this question is not plainly erroneous, but is supported by substantial evidence, as shown below.

Now, the majority is reversing the decision of the district court by holding that trial counsel did not discharge their duty to their client in connection with his trial. I cannot agree.

At the end of the trial, the petitioner, whom we have held to be competent, did not claim that his trial attorneys did not discharge their duty to him. In fact, just the opposite appears to be true, as he expressed satisfaction with their services. At that time he asked the trial judge to appoint them to appeal his case, all as shown by the following proceedings.

When the jury returned a verdict of guilty of first-degree murder and fixed petitioner's punishment at life imprisonment, the petitioner told the court that he wanted to appeal the case, but that he did not have the money to hire an attorney for the appeal. Whereupon, the court told him that attorneys would be appointed for him. The court asked petitioner *twice* if his trial counsel would be satisfactory with him if they were appointed to appeal his case, and *both times petitioner answered that he was satisfied with them* and that their appointment for the appeal would be satisfactory with him. At that time the following colloquy took place between the court and the petitioner:

"The Court: The court is going to at this time if it is agreeable with you appoint the two attorneys who have represented you thus far in this case. Mr. Tom Drake and Mr. John Chapman. Now, are these attorneys agreeable with you? Are you satisfied with them to perfect this appeal for you?

"The defendant: Yes, sir.

. . . . .

"The Court: Of course, I have appointed these attorneys for you—Mr. Drake and Mr. Chapman—and you have indicated to the court that you are satisfied with them to perfect this appeal for you?

"The defendant: Yes."

There is no question but what petitioner's counsel were competent attorneys. His present attorney in this appeal admits and concedes that they were and are competent attorneys.

The present contention of petitioner that his trial counsel did not discharge their duty to him in connection with his trial is a complete reversal of his expressed satisfaction with their services at the end of the trial. It is obvious to me that such an argument is nothing but a hindsight maneuver on his part to get out of prison.

I assume that in remanding the case for a hearing on whether the attorneys' conduct prejudiced the petitioner, the majority has in mind the efforts of trial counsel with reference to petitioner's insanity plea. I would point out that at no stage of the proceedings up to the present time has the petitioner named any witness who would testify that he was insane at the time of the offense, nor what the testimony would be, nor that any such witness is available and willing to testify and could be produced at a hearing. He has not alleged that his trial attorneys failed to investigate a single lead that he gave them relating to his insanity plea. Thus, it is clear that none of the basic and rudimentary requirements set forth in *United States v. Uptain, supra,* and other decided cases are present.

Furthermore, petitioner has not shown any prejudice because of the services of his attorneys. We held in *United States v. Phillips,* 585 F.2d 745, 747 (5 Cir. 1978) that a showing of prejudice is required for the reversal of a conviction, saying:

"[W]e cannot reverse appellant's conviction in the absence of a showing of prejudice. *See United States v. James,* 495 F.2d 434 (5th Cir.), *cert. denied,* 419 U.S. 899, 95 S.Ct. 181, 42 L.Ed.2d 144 (1974); *United States v. Saitta,* 443 F.2d 830, 831 (5th Cir.) *cert. denied,* 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971)."

The record shows that petitioner's trial counsel were active in his defense. Besides filing the motion for continuance, they filed a motion for a mental examination of petitioner under Title 15, § 425, of the Alabama Code, and various other motions. They filed a plea of not guilty by reason of insanity, which had to be filed as a special plea under Alabama law. During the trial they introduced the report of the psychologist, Dr. Dean, who had treated petitioner in California.[5] They examined and cross-examined various witnesses on the insanity issue, including the sheriff, Olin Buzbee, the sheriff's special investigator, G. O. Buckelew, and the petitioner's relatives. At the conclusion of the evidence, his attorneys made arguments to the jury in his behalf on the insanity issue. They also requested in writing a special charge on insanity and another on intoxication, both of which were denied by the court. However, the court did give the jury a full and complete charge on insanity as a defense. The court also furnished the jury with a special form prepared by counsel on which they could find Davis not guilty by reason of insanity. The court also charged the jury on the law as to first-degree murder and all lesser offenses, including murder by reason of insanity. They fully investigated the *only lead* given to them on the insanity issue by the petitioner, namely the treatment by Dr. Dean and his report. Nothing more could reason-

ably have been expected of trial counsel, especially in view of the fact they were appointed by the court and were representing a defendant who was competent both before and during the trial. In my opinion, petitioner's trial counsel complied with the requirement of this circuit by rendering reasonably effective assistance to petitioner under the circumstances of this case. Furthermore, in my opinion, the representation which petitioner's appointed trial counsel furnished to Davis fully discharged their duty to him.

The foregoing efforts on the part of trial counsel show that they rendered reasonably effective assistance of counsel on the insanity issue, which seems to be the only issue troubling the majority. This is especially true in view of the holding of another panel of this court in the prior appeal, as quoted above, which is binding on us, that:

(1) Petitioner had no history of irrational behavior.

(2) Dr. Dean's report negated any suggestion of incompetency.

(3) Lay witnesses testified he did not act irrationally or seem incoherent shortly after the crime and while confined in jail.

(4) Petitioner's demeanor when he testified at the hearing on the § 425 motion showed he was able to recite with great particularity and understanding facts concerning his family and his criminal record. There was no indication of incompetency.

(5) There was no evidence that he acted incompetently at his trial.

(6) The trial court did not err in dismissing petitioner's habeas petition which called into question his competency.

545 F.2d 464, 465.

The majority opinion unnecessarily expands and enlarges the doctrine of "effective trial counsel." A defendant is not entitled to "errorless counsel", but only to coun-

---

5. See a discussion of the contents of this report in our prior opinion (545 F.2d 465) as quoted above.

sel "reasonably likely to render and rendering reasonably effective assistance." [6]

The "effective assistance of counsel" cases relied on by the majority are distinguishable on the facts from the instant case. Those cases, without discussing them in detail, have, for the most part, a common characteristic or thread running through them, namely, the fact that trial counsel conducted no investigation at all, or, more commonly, failed to investigate specific leads furnished by their clients that were germane to their defenses. That is not the situation here. In our case, the trial attorneys conducted an investigation on their own, and they fully investigated the only lead furnished to them by petitioner bearing on his insanity defense, namely, the treatment by Dr. Dean and his report. But I gather from the majority opinion that they would require trial counsel to do more, such as travel from Alabama to California, presumably at their own expense, and conduct an investigation of petitioner's life from the time he was 10 years of age to the time he murdered his wife, without any leads furnished to them by their competent client, to try to discover by their own efforts in a widespread "fishing expedition", a witness somewhere, some place, somehow, who might possibly testify on petitioner's insanity defense. I think this is an unwarranted extension of the doctrine of what is required of an attorney "rendering reasonably effective assistance of counsel."

In the instant case, if there was any deficiency in counsel's investigation of petitioner's case, it was caused by the failure of their competent client to furnish leads, and not by negligence on the part of counsel.

By hindsight, petitioner now suggests for the first time certain other "leads" which might, or might not, have revealed information favorable to his defense had they been fully ·investigated. And whereas, the majority finds defense counsel ineffective: (1) for failure to search petitioner's past and uncover these leads for themselves, and (2) for then not fully developing these leads, I would require a competent defendant, such as the petitioner, and indeed. find it his duty, to assist his counsel by revealing instances of his past helpful to his own defense.

And lastly, should it be asserted that defense counsel failed to ask the right questions, which I candidly agree may or may not have been the case under the present state of the record, it must be remembered that the burden of proving ineffectiveness of counsel is upon the petitioner. And with regard to the record now before us, if there is any evidence at all establishing ineffectiveness in this regard, it is clearly not sufficient in my opinion to allow this court to overturn the finding of the district court made after hearing the witnesses and evaluating the evidence at the plenary hearing.

Finally, I would point out that petitioner has already had practically every kind of hearing and trial known to the state and federal courts. His case has been in litigation for seven years. He has practically made a career of it. He has had trials and hearings in all the Alabama state courts, including a trial and a *coram nobis* hearing in the district court, then appeals to the Court of Criminal Appeals, and the Supreme Court. His hearings in the federal courts include three habeas corpus appearances in the district court, two appeals to this court, and an appeal to the Supreme Court of the United States. He has had his day in court many times over. In my opinion, instead of starting the proceedings all over again, it is time petitioner's case is brought to a conclusion and he is made to pay the penalty assessed against him by the jury and the trial court for the heinous crime he committed. This is especially true

---

6. See *MacKenna v. Ellis*, 280 F.2d 592 (5 Cir. 1960), modified 289 F.2d 928 (5 Cir. 1961), *cert. denied*, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961), wherein the court held:

"We interpret the right to counsel as the right to effective counsel. We interpret counsel to mean not errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance." Also, see *Herring v. Estelle*, 491 F.2d 125, 127 (5 Cir. 1974); and *Haggard v. Alabama*, 550 F.2d 1019, 1023 (5 Cir., 1977).

in view of the overwhelming evidence of his guilt, which the majority admits.

It could be argued that the majority opinion, considered as a whole, along with the wording of the remand order, virtually predicts the outcome of the new hearing on prejudice it requires in the district court. Prejudice must be shown by the facts, and the district judge should have a free hand and be uninfluenced by anything we might say in determining it.

I would affirm the judgment of the district court denying the writ.